COMMISSIONER OF LABOR OF THE STATE OF NORTH CAROLINA, Respondent v. WEEKLEY HOMES, L.P., d/b/a DAVID WEEKLEY HOMES, Petitioner

No. COA03-1634

(Filed 15 March 2005)

**1. Appeal and Error— assignments of error—required—appendixes—statutes, rules, regulations**

The Court of Appeals considered certain arguments, in its discretion, even though the questions did not refer to the pertinent assignments of error, as required. Respondent's motion to strike certain appendixes to petitioner's brief was denied, even though they were not part of the printed record on appeal nor offered into evidence, because appendixes were relevant portions of statutes, rules, or regulations, as permitted by N.C.R. App. P. 28 (d)(1)(c). An appendix consisting of an excerpt from S.B. 575 was stricken.

**2. Administrative Law— judicial review of agency decision—standard of review—whole record and de novo**

The superior court properly employed both de novo review and the whole record test in reviewing an OSHA citation where petitioner alleged that the Department of Labor's decision was affected by error of law and was unsupported by substantial evidence.

**3. Employer and Employee— OSHA—violations by subcontractors—general contractor's duty to inspect job site**

A general contractor had a duty to inspect the job site to detect safety violations committed by its subcontractors as well as its own employees. Under N.C.G.S. § 95-129(2), the general

contractor's duty extends to employees of subcontractors on job sites, but only to violations that could reasonably be detected by inspecting the job site.

### 4. Administrative Law— Operations Manual statement—rule-making not required

The multi-employer OSHA citation policy is not invalid because it has not been promulgated as a rule. The multi-employer policy is from the North Carolina Operations Manual, which is a nonbinding interpretative statement, not a rule requiring formal rule-making procedures.

Appeal by petitioner from order entered 26 September 2003 by Judge Ripley E. Rand in Wake County Superior Court. Heard in the Court of Appeals 11 October 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Jane Ammons Gilchrist and Assistant Attorney General Linda Kimbell, for the State.*

*Maupin Taylor, P.A., by Michael C. Lord, and Rader & Campbell, by Robert E. Rader, Jr., for petitioner.*

MARTIN, Chief Judge.

Petitioner, Weekley Homes, L.P. (Weekley), appeals from a citation issued by the North Carolina Department of Labor on 21 May 1999 alleging a violation of the Occupational Safety and Health Standards. Weekley, a general contractor, coordinated subcontractors, materials and homeowners for thirty-eight houses under construction in a subdivision in Huntersville, North Carolina. For this project, Weekley employed two "builders" who maintained the construction schedule for six to ten houses at a time. The builders spent seventy to eighty percent of their time in the job site trailer coordinating approximately one hundred subcontractors and delivery of materials for the project.

On 17 March 1999, Lee Peacock (Peacock), a Safety Compliance Officer in the North Carolina Department of Labor, observed from a public road individuals working on a steep pitch roof over six feet from the ground without fall protection. After receiving permission from his supervisor, Peacock conducted an inspection of the job site on 18 March 1999. He observed three houses where employees of a Weekley subcontractor were working without fall protection.

The Department of Labor cited Weekley for a violation of 29 CFR 1926.20(b)(2) for failure to conduct "[f]requent or regular inspections of the jobsite . . . as part of an accident prevention program." On 5 December 2000, after hearing evidence and reviewing the parties' briefs, an Administrative Law Judge with the Safety and Health Review Board entered an order affirming the citation. After Weekley petitioned for review, the North Carolina Safety and Health Review Board affirmed the order. Weekley petitioned for judicial review and after considering the record, the briefs and the arguments of the parties the Superior Court affirmed the order of the review board. Weekley gave notice of appeal to this Court.

---

I.

**[1]** As an initial matter we address respondent-appellee's motion to dismiss petitioner's appeal for violation of the North Carolina Rules of Appellate Procedure. Respondent points out numerous violations in petitioner's brief including, most importantly, that the questions presented for argument do not refer to the pertinent assignments of error in the record as required by N.C. R. App. P. 28(b)(6) (2004). "The Rules of Appellate Procedure are mandatory and failure to follow the rules subjects an appeal to dismissal." *Wiseman v. Wiseman*, 68 N.C. App. 252, 255, 314 S.E.2d 566, 567-68 (1984). Nevertheless, in our discretion, we will consider petitioner's arguments on the merits. N.C. R. App. P. 2 (2004).

Respondent-appellee also moves the Court to strike Appendixes 2, 3, 4 and 5 of petitioner's brief pursuant to N.C. R. App. P. 37(a) because the content of these appendixes was not part of the printed record on appeal nor were they offered into evidence. N.C. R. App. P. 28(d)(1)(c) allows the attachment of "relevant portions of statutes, rules, or regulations, the study of which is required to determine questions presented in the brief" as an appendix. Petitioner has attached as Appendix 2, portions of the Federal OSHA Compliance Operations Manual (1972); as Appendix 3, portions of the North Carolina Operations Manual (1973); as Appendix 4, portions of the North Carolina Operations Manual (1993); and as Appendix 5 an excerpt from S.B. 575. Since Appendixes 2, 3 and 4 fall within those items permitted by Rule 28, we deny respondent's motion to strike these Appendixes. However, we grant respondent's motion to strike Appendix 5.

**N.C. COMM'R OF LABOR v. WEEKLEY HOMES, L.P.**

[169 N.C. App. 17 (2005)]

## II.

**[2]** The standard of review of an administrative agency's decision on judicial review is determined by the issues presented on appeal. *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997). A reviewing court:

> may affirm the decision of the agency or remand . . . for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2003).

Where the party alleges the agency violated subsections one through four of N.C. Gen. Stat. § 150B-51, the court engages in *de novo* review, reviewing for errors of law. *Dorsey v. UNC-Wilmington*, 122 N.C. App. 58, 62, 468 S.E.2d 557, 559, *cert. denied*, 344 N.C. 629, 477 S.E.2d 37 (1996). However, when the substance of the allegation implicates subsections five or six, the reviewing court employs the "whole record" test. *Id.* "The 'whole record' test requires the court to examine all competent evidence comprising the 'whole record' in order to ascertain if substantial evidence therein supports the administrative agency decision." *Id.* at 62, 468 S.E.2d at 560. Substantial evidence is defined as evidence "which a reasonable mind would regard as adequately supporting a particular conclusion." *Id.* The appellate court examines the superior court's order for errors of law by "(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *ACT-UP Triangle*, 345 N.C. at 706, 483 S.E.2d at 392 (quoting *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994)).

In this case, petitioner alleged the agency's decision was affected by error of law and was unsupported by substantial evidence. The superior court properly employed both standards of review and concluded the review board's findings were supported by substantial evidence and were not affected by error of law.

### III.

**[3]** Petitioner argues that the Occupational Safety and Health Act (OSHA) makes a general contractor responsible only for the safety of his own employees. Congress enacted OSHA in 1970 "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651. North Carolina, as permitted under the federal act, 29 U.S.C. § 667, *Brooks, Comr. of Labor v. Butler,* 70 N.C. App. 681, 684, 321 S.E.2d 440, 442 (1984), *disc. review denied,* 313 N.C. 327, 329 S.E.2d 385 (1985), administers and operates, under federal supervision, its own plan, known as the Occupational Safety and Health Act of North Carolina (OSHANC). N.C. Gen. Stat. § 95-126 *et. seq.* (2003). Pursuant to N.C. Gen. Stat. § 95-131, the federal occupational safety and health standards have been adopted by North Carolina. N.C. Gen. Stat. § 95-131 (2003). OSHANC sets forth the rights and duties of employers including but not limited to the following provisions:

> (1) Each employer shall furnish to each of his employees conditions of employment and a place of employment free from recognized hazards that are causing or are likely to cause death or serious injury or serious physical harm to his employees;
>
> (2) Each employer shall comply with occupational safety and health standards or regulations promulgated pursuant to this Article.

N.C. Gen. Stat. § 95-129(1) and (2) (2003). North Carolina's Act is substantially the same as the federal Act. 29 U.S.C. § 654.

Petitioner contends that neither Congress nor the North Carolina legislature intended to impose a duty on an employer to protect the employees of its independent contractors. In support of their argument, petitioner points to definitions in the Act. An "occupational safety and health standard" is defined as a standard "reasonably necessary and appropriate to provide safe and healthful employment and places of employment," N.C. Gen. Stat. § 95-127(15) (2003); *see* 29 U.S.C. § 652(8) (1998), while "employer" is defined as "a person engaged in a business who has employees." N.C. Gen. Stat.

§ 95-127(10) (2003); *see* 29 U.S.C. § 652(5) (1998). Petitioner interprets these definitions in combination as prescribing the duties of an employer only in reference to his own employees, not those of another entity.

In addition, petitioner argues that N.C. Gen. Stat. § 95-129 and 29 U.S.C. § 654(a) impose a duty on each employer to furnish a safe workplace and to comply with specific standards regarding only *his own* employees. Petitioner contends the legislature understood the difference between one who operates or controls the workplace and one who is an employer and argues that had the legislature intended the Act to apply to employees of another employer on a multi-employer worksite, it would have defined "employer" differently. We reject petitioner's interpretation of the statute.

"When the issue on appeal is whether a state agency erred in interpreting a statutory term, an appellate court may freely substitute its judgment for that of the agency and employ *de novo* review." *Brooks, Comr. of Labor v. Grading Co.,* 303 N.C. 573, 580, 281 S.E.2d 24, 29 (1981) (citations omitted). "However, even when reviewing a case *de novo*, courts recognize the long-standing tradition of according deference to the agency's interpretation," *County of Durham v. N.C. Dep't of Env't. & Natural Resources,* 131 N.C. App. 395, 396, 507 S.E.2d 310, 311 (1998), *disc. review denied,* 350 N.C. 92, 528 S.E.2d 361 (1999), as long as the agency's interpretation was a reasonable and permissible construction of the statute. *Id.* at 397, 507 S.E.2d at 311.

In *Chevron, U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 842-43, 81 L. E. 2d 694, 702-03, *reh'g denied,* 468 U.S. 1227, 82 L. Ed. 2d 921 (1984), the United States Supreme Court stated:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the

**N.C. COMM'R OF LABOR v. WEEKLEY HOMES, L.P.**

[169 N.C. App. 17 (2005)]

specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

When a statute is ambiguous, "the courts should consider the language of the statute, the spirit of the act, and what the act seeks to accomplish," *Tellado v. Ti-Caro Corp.*, 119 N.C. App. 529, 533, 459 S.E.2d 27, 30 (1995), in order to assure that the intent of the legislature is accomplished. *Id.*

Neither OSHANC nor OSHA specifically address whether an employer is responsible for violation of standards by a subcontractor's employees on a multi-employer worksite. While we agree that N.C. Gen. Stat. § 95-129(1) imposes a general duty on an employer to protect his employees, we believe N.C. Gen. Stat. § 95-129(2), which imposes a specific or special duty on an employer to comply with OSHA standards, does not limit the duty of the employer only to his *own* employees. N.C. Gen. Stat. § 95-126(2) declares the purpose of the act is "to ensure so far as possible every working man and woman in the State of North Carolina safe and healthful working conditions and to preserve our human resources." N.C. Gen. Stat. § 95-126(2) (2003). This broad purpose, protecting "every working man and woman," does not fit with petitioner's narrow reading of the statute. As the Sixth Circuit held when deciding this issue in *Teal v. E.I. Dupont*, 728 F.2d 799, 804 (6th Cir. 1984), "If the special duty provision is logically construed as imposing an obligation on the part of employers to protect *all* of the employees who work at a particular job site, then the employees of an independent contractor who work on the premises of another employer must be considered members of the class that Sec. 654(a)(2) was intended to protect." Furthermore, "the conspicuous absence of any limiting language . . . indicate[s] that a broader class was meant to be protected." *U.S. v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 983 (7th Cir. 1999); *see Russello v. United States*, 464 U.S. 16, 23, 78 L. Ed. 2d 17, 23 (1983).

"The multi-employer doctrine provides that an employer who controls or creates a worksite safety hazard may be liable under the Occupational Safety and Health Act even if the employees threatened by the hazard are solely employees of another employer." *Universal Const. Co., Inc. v. O.S.H.R.C.*, 182 F.3d 726, 728 (10th Cir. 1999). The theory underlying the doctrine "is that since the contractor is subject to OSHA's regulations of safety in construction by virtue of being engaged in the construction business, and has to comply with those regulations in order to protect his own workers at the site, it is sen-

sible to think of him as assuming the same duty to the other workers at the site who might be injured or killed if he violated the regulations." *U.S. v. MYR Group, Inc.*, 361 F.3d 364, 366 (7th Cir. 2004). "Each employer at the worksite controls a part of the dangerous activities occurring at the site and is the logical person to be made responsible for protecting everyone at the site from the dangers that are within his power to control." *Id.* at 367.

The only two North Carolina cases that address the multi-employer worksite doctrine are inapposite to the issue presented in the present case. In both of those cases, the Court affirmed citations against employers because they had allowed their *own employees*, rather than employees of a subcontractor, to be exposed to the hazards created by the subcontractor. *Brooks v. BCF Piping*, 109 N.C. App. 26, 426 S.E.2d 282, (1993) (holding an employer's duty to provide a safe workplace is nondelegable); *Brooks, Com'r. of Labor v. Rebarco, Inc.*, 91 N.C. App. 459, 372 S.E.2d 342 (1988) (holding "an employer is expected to make reasonable efforts to detect and abate any violation of safety standards of which it is aware and to which its employees are exposed."). However, because of the substantial similarities between OSHANC and the federal Act, this Court also looks to federal court decisions for guidance in interpreting OSHANC. *Butler*, 70 N.C. App. at 684, 321 S.E.2d at 442; *Brooks, Com'r. of Labor v. Dover Elevator Co.*, 94 N.C. App. 139, 142, 379 S.E.2d 707, 709 (1989). Most circuits have expressed approval of the multi-employer worksite doctrine. *See Pitt-Des Moines, Inc.*, 168 F.3d at 984-85; *R. P. Carbone v. OSHRC*, 166 F.3d 815, 818 (6th Cir. 1998); *Beatty Equipment Leasing v. Secretary of Labor*, 577 F.2d 534, 537 (9th Cir. 1978); *Marshall v. Knutson Const. Co.*, 566 F.2d 596, 599-600 (8th Cir. 1977); *Brennan v. Occupational Safety & Health Rev. Com'n*, 513 F.2d 1032, 1037-39 (2d Cir. 1975); *Universal Const. Co., Inc.*, 182 F.3d at 730-31; *but see Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 710-11 (5th Cir. 1981) (holding that OSHA regulations protect only an employer's own employees).

In addition, although not binding on this Court, the Safety and Health Review Board of North Carolina has previously addressed the issue of liability of a general contractor for violations of OSHA standards to which a subcontractor's employees are exposed:

[A] general contractor's duty under N.C.G.S. § 95-129(2) to comply with "occupational safety and health standards or regulations" runs to employees of subcontractors on the jobsite.

However, that duty is a reasonable duty and although the general contractor is responsible for assuring that the contractors fulfill their obligations for employee safety that affect the whole construction site, the general contractor is only liable for those "violations it could reasonably have been expected to prevent or abate by reason of its supervisory capacity."

*Commissioner of Labor v. Romeo Guest Associates, Inc.,* OSHANC 96-3513, Slip Op., (RB 1998).

Petitioner argues *Romeo Guest*, like *BCF Piping* and *Rebarco*, did not address the issue at hand. It asserts *Romeo Guest* relied on *Brennan v. Occupational Safety & Health Rev. Com'n.*, 513 F.2d 1032 (2d Cir. 1975), where "the court was discussing the liability of the contractor *who had created the hazard.*" Although the contractor in *Occupational Safety & Health Rev. Com'n. had* created the hazard, the 2nd Circuit held that "to prove a violation of OSHA the Secretary of Labor need only show that a hazard has been committed and that *the area of the hazard was accessible to the employees of the cited employer or those of other employers engaged in a common undertaking.*" *Id.* at 1038 (emphasis added). The court further opined the employer was responsible for creation of a hazard if it "had control over the areas in which the hazards were located and the duty to maintain those areas." *Id.* at 1039. Thus, neither *Romeo Guest* nor *Occupational Safety & Health Rev. Com'n.* are false foundations for the decision of the Safety and Health Review Board. In addition, in its contract with subcontractor Paige, petitioner reserved, *inter alia*, the following rights:

  (a) the right to inspect Paige's work from time to time and to reject portions of the work if not done in a satisfactory manner, with satisfactory materials or in a timely fashion in accordance with the [petitioner's] standards;

  (b) the right to schedule Paige's work and the work of other contractors;

  (c) the right to prevent Paige from impeding the progress of the work by other contractors;

  (d) the right to compel Paige to keep the job site clean of debris at all times and to clean the job site upon completion of each stage of the project;

(e) the right to compel Paige to comply with all safety, health and other laws, ordinances, rules and regulations applicable to the project; and

(f) the right to withhold payment or terminate the contract if Paige does not comply with its terms and conditions, including failure to comply with OSHA requirements after respondent tells them that they are in violation.

Section 1926.20(b)(2) of the OSHA regulations provides, "[accident prevention] programs shall provide for frequent and regular inspections of the job sites, materials, and equipment to be made by competent persons designated by the employers." Contractually, petitioner had the right to compel Paige to comply with all safety regulations, giving petitioner the power to protect the subcontractor's employees by inspecting the worksite and compelling the subcontractor to comply with safety regulations. *See Bechtel Power Corporation v. Secretary of Labor*, 548 F.2d 248 (8th Cir. 1977) (holding the construction manager who was contractually responsible for the construction site's safety program possessed the power to protect its employees). After reviewing the statute, the history of the multi-employer doctrine, and the spirit and goals of OSHA, we conclude the agency's decision was based on a permissible construction of the statute. Therefore, we hold that N.C. Gen. Stat. § 95-129 does not limit an employer's responsibility to comply with occupational health and safety standards to only its own employees.

Next, petitioner contends that OSHA's own regulations, specifically 29 C.F.R. § 1910.2(a) (1998) and 1910.5(d) (1998), provide that one employer may not be cited for violations of another employer's infractions. As previously stated, Congress enacted OSHA to reduce employment related injury and illness. 29 U.S.C. § 651 (1998). "For further guidance, Congress provided OSHA with authority to promulgate occupational safety and health standards by regulation." *Modern Continental v. Occupational Safety*, 305 F.3d 43, 49 (1st Cir. 2002). OSHA has issued two different types of standards: (1) general industry standards, *see* 29 C.F.R. § 1910 (1998), which act as a default set of standards, and (2) standards applicable only to certain industries such as the construction industry. *Id.*; *see* 29 C.F.R. § 1926 (1998). These specific construction industry regulations are "applicable to any place of employment where construction work is performed." *Id.*; *see* 29 C.F.R. § 1910.12(a) (1998).

Section 1910.12 establishes § 1926 as the standard for the construction industry. Although section (a) provides in part that "[e]ach employer shall protect the employment and places of employment of each of his employees engaged in construction work by complying with the appropriate standards prescribed in this paragraph," 29 C.F.R. § 1910.12(a), this sentence, when read in context, simply requires the contractor to comply with the appropriate construction industry standards. General industry standards, such as those in § 1910, essentially fill in the gaps that are not addressed in § 1926. 29 C.F.R. § 1910.5(c) (1998).

Section 1910.5(d) provides, "In the event a standard protects on its face a class of persons larger than employees, the standard shall be applicable under this part only to employees and their employment and places of employment." 29 C.F.R. § 1910.5 (1998). We interpret this as distinguishing between employees on a job site and "passersby or unrelated third persons." *Occupational Safety & Health Rev. Com'n.*, 513 F.2d at 1038 n.10 (2nd Cir. 1975); *IBP, Inc. v. Herman*, 144 F.3d 861, 865 (D.C. Cir. 1998); *but see Brennan v. Gilles & Cotting, Inc.*, 504 F.2d 1255 (4th Cir. 1974) (where the Secretary issued an interpretive statement limiting the effect of safety regulations to the employment relationship, the court did not address whether Congress granted the Secretary authority to require employers in multi-employment worksites to obey safety regulations for the protection of subcontractors).

Petitioner also contends that 29 C.F.R. § 1926.20(b)(1) limits the duty to inspect to the employer of the affected employee, i.e., in this case, the subcontractor. However, "employer" is defined in section 1926.32, the part which applies to the construction industry, as a "contractor *or subcontractor* within the meaning of the Act." (emphasis added) Petitioner's argument is without merit.

Petitioner also argues that the review board's decision upholding the citation contravenes established principles of statutory construction because (1) Congress revisited OSHA in 1990 and did not revise or repeal OSHA's interpretation or policy, and (2) the agency's initial interpretation of the Act should be accorded more weight than a recent contrary interpretation. He also argues that OSHA's initial interpretation of the Act and its initial policy on multi-employer worksites are an admission that the Act itself does not impose a duty on a general contractor to detect subcontractor violations through inspection. However, petitioner failed to acknowledge the evolution

of the multi-employer worksite doctrine through thirty years of court decisions. Since there has been no legislation by Congress or the North Carolina General Assembly overturning these decisions, they are established precedent which are binding on the courts in their jurisdiction.

We hold that a general contractor's duty under N.C. Gen. Stat. § 95-129(2), requiring that "[e]ach employer shall comply with occupational safety and health standards or regulations," extends to employees of subcontractors on job sites. However, as stated in *Romeo Guest*, the duty is a reasonable duty and the general contractor is only liable for violations that its subcontractor may create if it could reasonably have been expected to detect the violation by inspecting the job site. *Romeo Guest*, OSHANC 96-3513, Slip Op.

In the present case, petitioner was cited for failing to conduct "frequent and regular inspections of the job sites[]." 29 C.F.R. § 1926.20(b)(2). Petitioner had a duty to inspect the job site to detect safety violations committed by its own employees and also those committed by its subcontractors.

## IV.

[4] In petitioner's second argument, he contends the multi-employer citation policy is invalid because it has not been promulgated as a rule. An administrative rule is not valid unless adopted in accordance with Article 2A of the Administrative Procedure Act. N.C. Gen. Stat. § 150B-18 (2003); *Dillingham v. N.C. Dep't of Human Resources*, 132 N.C. App. 704, 710, 513 S.E.2d 823, 827 (1999). N.C. Gen. Stat. § 150B-2 defines a rule as "any agency regulation, standard, or statement of general applicability that implements or interprets an enactment of the General Assembly or Congress or a regulation adopted by a federal agency or that describes the procedure or practice requirements of an agency." N.C. Gen. Stat. § 150B-2 (2003). Another distinguishing factor of a rule is that sanctions attach to the violation of a rule. *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 411, 269 S.E.2d 547, 568 (1980). However, the term "rule" does not include:

a. Statements concerning only the internal management of an agency or group of agencies within the same principal office or department enumerated in G.S. 143A-11 or 143B-6, including policies and procedures manuals, if the statement does not

directly or substantially affect the procedural or substantive rights or duties of a person not employed by the agency or group of agencies.

. . .

c. Nonbinding interpretative statements within the delegated authority of an agency that merely define, interpret, or explain the meaning of a statute or rule.

. . .

g. Statements that set forth criteria or guidelines to be used by the staff of an agency in performing audits, investigations, or inspections; in settling financial disputes or negotiating financial arrangements; or in the defense, prosecution, or settlement of cases.

N.C. Gen. Stat. § 150B-2(8a).

Weekley was cited for violation of 29 C.F.R. § 1926.20(b) which required "the employer to provide for frequent and regular inspections of the job sites." In regards to the multi-employer worksite, the North Carolina Operations Manual (1993) states:

On multi-employer worksites, both construction and nonconstruction citations normally shall be issued to employers whose employees are exposed to hazards (the exposing employer).

a. Additionally, the following employers normally shall be cited, whether or not their own employees are exposed:

  (1) The employer who actually creates the hazard (the creating employer); ·

  (2) The employer who is responsible, by contract or through actual practice, for safety and health conditions on the worksite; i.e., the employer who has the authority for ensuring that the hazardous condition is corrected (the controlling employer);

  (3) The employer who has the responsibility for actually correcting the hazard (the correcting employer).

b. It must be shown that each employer to be cited has knowledge of the hazardous condition or could have had such knowledge with the exercise of reasonable diligence.

The Operations Manual is a nonbinding statement which interprets, *inter alia*, the rule requiring inspections. In requiring an employer to inspect the worksite regularly, the Operations Manual merely guides the inspectors regarding who can be cited for a violation. Furthermore, the multi-employer policy as stated in the Operations Manual does not impose sanctions for failure to comply. Sanctions are imposed for violation of the rule, i.e., failure to inspect, not for violation of the policy which only describes who can be cited. Therefore, the multi-employer policy, an interpretive statement established in the Operations Manual, falls within the exception created by N.C. Gen. Stat. § 150B-(8a)(c) and does not have to be promulgated as a rule.

Petitioner relies on *Dillingham*, where the Department of Social Services' "Aged, Blind and Disabled Medicaid Manual" established a policy that when an applicant transferred assets at less than fair market value in order to qualify for Medicaid, the applicant was required to present written evidence as to the reason for the transfer. *Dillingham*, 132 N.C. App. at 711, 513 S.E.2d at 823. The Court determined this was a "rule" under the APA because there was "neither statutory nor regulatory authority for the requirement that a Medicaid applicant present *written* evidence to rebut the presumption that a transfer of assets for less than fair market value was for the purpose of establishing Medicaid eligibility." *Id.* at 711, 513 S.E.2d 823, 827-28 (emphasis original). Here, however, there is statutory authority granted to the Department of Labor to protect the health and safety of all employees in North Carolina. N.C. Gen. Stat. § 95-126(b)(2)(m) (2003). The Operations Manual is merely an interpretive guideline as to who can be cited and does not require additional evidence or a more stringent standard of proof.

Petitioner argues that even if the multi-employer citation policy was not required to be promulgated as a rule initially, the revision of that policy in the Operations Manual requires that it be subject to formal rule-making procedures. N.C. Gen. Stat. § 150B-2(8a)(c) provides that a "rule" does not include "[n]onbinding interpretive statements within the delegated authority of an agency that merely define, interpret, or explain the meaning of a statute or rule." *See Okale v. N.C. Dep't. of Health & Human Services*, 153 N.C. App. 475, 478-79, 570 S.E.2d 741, 743 (2002) (holding the North Carolina Family and Children's Medicaid Manual is a "nonbinding statement from the agency which defines, interprets and explains the statutes and rules for Medicaid" and does not require the procedures of formal rule-

making); *Ford v. State of North Carolina*, 115 N.C. App. 556, 445 S.E.2d 425 (1994) (a memorandum setting forth guidelines to be followed when investigating and prosecuting violations of state law fell within the meaning of N.C. Gen. Stat. § 150B-2(8a)(c) and (g) and therefore was not subject to formal rule-making). Therefore, contrary to petitioner's argument, the Operations Manual is a non-binding interpretive statement, not a rule requiring formal rule-making procedures. Accordingly, the exception which requires rule-making if the rights and duties of the employer are affected does not apply. We hold that the Operations Manual merely established guidelines that directed OSHA inspectors as to what parties could be cited for violation of a rule and thus did not require formal rule-making.

### V.

Petitioner's third argument, that the Safety and Health Review Board did not address the issues of legislative intent or OSHA's own regulations precluding multi-employer liability, was not assigned as error. Therefore, pursuant to the Rules of Appellant Procedure, we decline to address the argument further. N.C. R. App. P. 10(a) (2004). In addition, petitioner's second and third assignments of error were not brought forward in its brief and are therefore deemed abandoned. N.C. R. App. P. 28(a) (2004).

We affirm the decision of the Superior Court.

Affirmed.

Judges TIMMONS-GOODSON and GEER concur.