NATIONAL MEDICAL ENTERPRISES, INC. AND CUMBERLAND COUNTY v. KATIE LEE SANDROCK, JANE H. SANDROCK, JACK CARROL SAND-ROCK, TOMMY LEE SANDROCK, TERRY LYNN SANDROCK DAVIS, JOHN OLIVER SANDROCK, KATHY LEIGH SANDROCK CRABB, AND ANY UNKNOWN OR UNBORN HEIRS OF JOHN SANDROCK, DECEASED

No. 8412SC284

(Filed 15 January 1985)

**1. Hospitals § 1— lease to for-profit entity—lease illegal**

   In enacting G.S. 131-126.20(c) the Legislature intended to authorize a county to lease its hospital facilities to a nonprofit entity but not to a for-profit entity; therefore, a proposed lease between plaintiff county and plaintiff for-profit corporation which proposed to operate the hospital was illegal and void.

Nat'l Medical Enterprises, Inc. v. Sandrock

2. **Hospitals § 1; Deeds § 15— definition of public hospital—proposed lease to for-profit entity—termination of determinable fee**

As used in a deed from defendant's decedent-grantor to plaintiff county, the term "public hospital" was intended to mean a hospital owned and operated by the county under the Municipal Hospital Facilities Act, revenues from which would inure to the county, and which could be leased to a nonprofit association but not a for-profit corporation; therefore, operation of the hospital under the proposed lease to plaintiff for-profit corporation would be contrary to the grantor's intent and would terminate the county's determinable fee in favor of defendant's reversion.

3. **Attorneys at Law § 7— action involving effect of lease—award of fees properly denied**

Where the principal controversy involved the legal effect of a proposed lease, not construction of decedent-grantor's will to determine ownership of any reverter interest the lease might trigger, the trial court did not err in denying the claim of defendant, owner of the possibility of reverter reserved by the grantor, for attorney's fees under G.S. 6-21(2), nor did the court abuse its discretion in denying fees pursuant to G.S. 1-263.

APPEAL by plaintiffs from *Bowen, Judge.* Judgment entered 15 December 1983 in Superior Court, CUMBERLAND County. Appeal by defendant Jane H. Sandrock (defendant) from *Bowen, Judge.* Order entered 6 January 1984 in Superior Court, HARNETT County. Heard in the Court of Appeals 16 November 1984.

Plaintiffs are Cumberland County (County), the owner of premises operated as a public hospital, and National Medical Enterprises, Inc. (NME), a for-profit corporation which proposes to lease and operate the Hospital. Defendant's decedent-grantor deeded the property in question to the County in fee simple determinable, "for so long as the same is used as the site for a public hospital, health center, clinic or similar establishment or related use and no longer." Plaintiffs and defendant agree that defendant is the owner of the possibility of reverter reserved by the grantor. The other initial defendants (possible heirs and assignees of the grantor) have not appealed and any question as to the ownership of the reversion is deemed waived.

Plaintiffs brought this action for a declaratory judgment to quiet title. They sought a determination that the proposed lease would not terminate the determinable fee of the County. Defendant answered that the estate conveyed by deed to the County would be destroyed by the Lease Agreement and by the operation of the Hospital by NME as lessee. In defendant's counter-

claim she requested that the court determine the validity of the Lease Agreement and Addendum. Both parties moved for summary judgment.

The court granted summary judgment for defendant and declared the following:

1. Defendant is the owner of the possibility of reverter reserved by the grantor, now deceased, in his deed to County.

2. The Lease Agreement between County as lessor and NME as lessee is unlawful, invalid, and legally unenforceable.

3. The Addendum (extending the effective date of the lease) between County as lessor and NME as lessee is unlawful, invalid, and legally unenforceable.

4. Commencement of the lease under the Agreement will terminate the fee simple determinable estate conveyed to County by decedent.

From this order plaintiffs appeal.

On 6 January 1984 the court denied defendant's motion for counsel fees. From that order defendant appeals.

*Hollowell & Silverstein, P.A., by Edward R. Hollowell and Robert L. Wilson, Jr.; Brown, Fox & Deaver, P.A., by Bobby G. Deaver; Garris Neil Yarborough; and Womble, Carlyle, Sandridge & Rice, by Roddey M. Ligon, Jr., for plaintiffs.*

*McCoy, Weaver, Wiggins, Cleveland and Raper, by John E. Raper, Jr., for defendant Jane H. Sandrock.*

WHICHARD, Judge.

I.

The first issue concerns the validity of the lease and the addendum between County and NME. We hold that the lease and, by extension, the addendum to the lease are unlawful, invalid, and legally unenforceable.

Plaintiffs argue that the County has authority to lease the Hospital to a for-profit corporation pursuant to G.S. 160A-272. They cite the following provision:

> Any property owned by a [county] may be leased or rented for such terms and upon such conditions as the [commissioners] may determine, but not for longer than 10 years . . . and only if the [commissioners determine] that the property will not be needed by the [county] for the term of the lease.

G.S. 160A-272.[1]

[1]   Defendant argues that the County has authority to operate and lease hospital facilities pursuant to G.S. 131-126.20 and not pursuant to 160A-272. She cites the following provision:

> (c) Any [county] may enter into a contract or other arrangement with any other [county] or other public agency of this or any other state . . . or with any individual, private organization or nonprofit association for the provision of hospital, clinic or similar services . . . . A [county] may lease any hospital facilities to any nonprofit association on such terms and subject to such conditions as will carry out the purposes of this Article.

G.S. 131-126.20(c).[2] We agree with defendant.

The County is authorized to provide hospital services under G.S. 153A-249, which reads: "A county may provide and support hospital services pursuant to Chapter 131." As stipulated by the parties, pursuant to Chapter 131 the County organized and operates the Hospital under the Municipal Hospital Facilities Act, G.S. 131-126.18 *et seq.* The County has no authority to act absent enabling legislation. *O'Neal v. Wake County*, 196 N.C. 184, 186, 145 S.E. 28, 29 (1928). The legislation quoted above, G.S. 131-126.20(c), authorizes the leasing of hospital facilities only to a non-

---

1. G.S. 153A-176 makes the provisions of Ch. 160A, Art. 12, relating to disposition of property by cities, applicable to counties. It also authorizes the above alterations in terminology to make the references to cities and their officials appropriate for counties and their officials.

2. As indicated *infra*, G.S. 153A-249 authorizes counties to provide and support hospital services pursuant to Ch. 131. For the convenience of the reader, "county" has thus been substituted for "municipality" in the foregoing statute.

profit association. Plaintiffs have stipulated that NME is a for-profit, investor-owned corporation; it therefore is not a nonprofit association as that term is defined by the Municipal Hospital Facilities Act at G.S. 131-126.18(5) and used in G.S. 131-126.20(c).

Plaintiffs argue that because G.S. 131-126.20(c) does not mention leasing hospital facilities to for-profit corporations it does not govern and G.S. 160A-272 does. We find this argument without merit. G.S. 160A-272 is a general statute covering the lease or rental of surplus property by a municipality or a county for less than ten years. G.S. 131-126.20(c) provides specifically for the leasing of hospital facilities.

It is a rule of statutory construction that

"[w]here one statute deals with the subject matter in detail with reference to a particular situation and another statute deals with the same subject matter in general and comprehensive terms, the particular statute will be construed as controlling the particular situation unless it clearly appears that the General Assembly intended to make the general act controlling in regard thereto . . . ."

*Utilities Comm. v. Electric Membership Corp.*, 3 N.C. App. 309, 314, 164 S.E. 2d 889, 892 (1968) (quoting 7 Strong, N.C. Index 2d, Statutes, Sec. 5, p. 73). Further,

[our] Supreme Court has spoken many times on the question of interpretation of statutes. "Where there are two provisions in a statute, one of which is special or particular and the other general, which, if standing alone, would conflict with the particular provision, the special will be taken as intended to constitute an exception to the general provisions, as the General Assembly is not to be presumed to have intended a conflict."

*Id.*, citing *Davis v. Granite Corp.*, 259 N.C. 672, 676, 131 S.E. 2d 335, 338 (1963).

The absence of specific language in Chapter 131 either authorizing or prohibiting the lease of a hospital to a for-profit corporation should not be interpreted as authority for such a lease. The inclusion of statutory authority to lease to nonprofit associations in G.S. 131-126.20(c) operates to exclude authority to lease to

for-profit corporations. *In re Taxi Co.*, 237 N.C. 373, 376, 75 S.E. 2d 156, 159 (1953) (citing the "sound rule of statutory construction [that] . . . the expression of one thing is the exclusion of another"). Thus, it must be assumed that in enacting G.S. 131-126.20(c) the legislature intended to authorize a county to lease its hospital facilities to a nonprofit entity but not to a for-profit entity. Passage of the later, general provision in G.S. 160A-272 did not expressly or by implication repeal G.S. 131-126.20(c). *See Person v. Garrett, Comr. of Motor Vehicles*, 280 N.C. 163, 165-66, 184 S.E. 2d 873, 874 (1971).

As an agreement contrary to the applicable statutory provision, which we find to be G.S. 131-126.20(c), the proposed lease between the County and NME is illegal and void. *See Cauble v. Trexler*, 227 N.C. 307, 311, 42 S.E. 2d 77, 80 (1947) (agreements against public policy illegal and void; when legislature enacts statute, purpose of statute becomes public policy).

In light of our disposition of this issue, we find it unnecessary to reach the question of whether the Lease Agreement violates G.S. 159-39.

II.

[2] The second issue concerns the legal significance of the term "public hospital" as used in the deed to the County, and whether operation of the Hospital as envisioned by the proposed Lease Agreement would trigger the reversionary interest retained in the conveyance. We hold that operation of the hospital under the proposed lease would be contrary to the grantor's intent and would terminate the County's determinable fee in favor of defendant's reversion.

We are aware that a "public hospital" is defined as "any hospital . . . [o]n whose behalf a county or city has issued and has outstanding general obligation or revenue bonds . . . ." G.S. 159-39(a)(3). Moreover, the parties have stipulated that "[t]here are outstanding Cumberland County general obligation bonds issued on behalf of the Hospital, and thus the Hospital is [presently] a public hospital as defined in . . . G.S. . . . 159-39." Since the County bonds will not be paid by the expiration of the term of the proposed lease, the Hospital will continue to be a public hospital under the lease as that term is statutorily defined.

The issue, however, does not require applying a statutory definition enacted after the grant to the limitation created by the grantor's deed. It requires a determination of the legal significance of the term public hospital as used by the grantor. *See Reynolds v. Sand Co.*, 263 N.C. 609, 613, 139 S.E. 2d 888, 891 (1965).

We are persuaded that by the term "public hospital" the grantor intended to create a hospital owned and operated by the County, the revenues from which would inure to the County. Among other evidence, the following uncontroverted statements accompanied defendant's motion for summary judgment:

2. As Chairman of the Board, I led the Board in its considerations to build and finance the construction of the Cape Fear Valley Hospital (the "Hospital"). As spokesman and agent for the Building Committee, I represented the Building Committee and the Board in the selection of a site for the Hospital, in the negotiations with John Sandrock for the gift of the land for the Hospital, in the negotiation with the John Owen heirs for a right-of-way from the Raeford Road to the Sandrock property, in the selection of an architect for the project, in the application for Hill-Burton funds and in the supervision of the construction and equipment of the Hospital.

. . . .

16. I approached John Sandrock and asked him to give the County 30 acres of his Airport property. In my negotiations with John Sandrock for the gift and conveyance of this property, I represented to him that the property would be used for the construction and operation of a public hospital which the County would own, manage and operate and receive the revenues from its operation.

. . . .

22. Based on my negotiations with him, I am of the opinion that John Sandrock intended by the Deed to convey this property to the County as a "public hospital" to be owned and operated by the County with the County and its citizens to receive the benefit of the revenues earned.

. . . .

28. In accepting the gift of the 30 acres from John Sandrock, the Board acting on behalf of the County acquired the real property described in the Deed from John Sandrock under the authority of and for the purposes set out in the Municipal Hospital Facilities Act.

Affidavit of Lector E. Ray (filed 1 December 1983).

2. As County Attorney, I advised the Board in its considerations to build and finance the construction of the Cape Fear Valley Hospital (the "Hospital"). As legal advisor to the Building Committee, I was responsible for recording the minutes of the meetings of and handling all the correspondence for the Building Committee and the Board in the selection of a site for the Hospital, in the negotiations with John Sandrock for the gift of the land for the Hospital, in the negotiation with the John Owen heirs for a right-of-way from the Raeford Road to the Sandrock property, in the selection of an architect for the project, in the application for Hill-Burton funds and in the supervision of the construction and equipment of the Hospital.

. . . .

29. Based on my discussions and negotiations with James MacRae as attorney for John Sandrock, it is my opinion that Attorney MacRae understood that the County was proceeding to establish the Cumberland County Hospital under the Municipal Hospital Facilities Act and was familiar with said Municipal Hospital Facilities Act.

30. Under the terms and conditions of the granting and habendum clauses of the Deed the County was conveyed the real property described in the Deed "for so long as the same is used as a site for a public hospital, health center, clinic or similar establishment or related use and no longer." It is my opinion that "public hospital" as used in the Deed refers to Chapter 131, entitled "Public Hospitals," of the North Carolina General Statutes and in particular to the Municipal Hospital Facilities Act contained therein under which the County was proceeding in its efforts to establish the Cumberland County Hospital.

31. It is my opinion that John Sandrock intended by the Deed to convey to the County the real property described therein for use as a "public hospital, health center, clinic or similar establishment or related use" and that ownership remain in the County. He refused to execute the Deed or authorize recordation until the Hospital was approved by the North Carolina Medical Care Commission.

Affidavit of Lester G. Carter, Jr. (filed 1 December 1983).

At the time the Hospital was organized, the Municipal Hospital Facilities Act allowed the County to contract for services with any government, individual, or corporation (nonprofit or for-profit), but to lease a hospital only to a nonprofit association. G.S. 131-126.20(c). At the time of the grant, leases to for-profit corporations such as NME were not authorized. Thus, as used in the deed, the term "public hospital" appears intended to mean a hospital owned and operated by the County under the Municipal Hospital Facilities Act, revenues from which would inure to the County, and which could be leased to a nonprofit association but not a for-profit corporation.

### III.

[3] Defendant contends the court should have allowed her motion for an attorney's fee under the following provision:

Costs in the following matters shall be taxed against either party, or apportioned among the parties, in the discretion of the court:

(2) . . . [A]ny action or proceeding which may require the construction of any will . . ., or fix the rights . . . of parties thereunder.

G.S. 6-21(2). Defendant also cites G.S. 1-263, which states that "the court may make such award of costs as may seem equitable and just" in any action brought under the Declaratory Judgment Act.

The court considered arguments of counsel and ruled that defendant's motion "should be denied." It thus appears to have acted in its discretion. The principal controversy involved the legal effect of the proposed lease, not construction of the decedent-grantor's will to determine ownership of any reverter inter-

est the lease might trigger. In light of the altogether peripheral nature of the reverter issue, assuming without deciding that the court had authority to award an attorney's fee, it clearly did not abuse its discretion in declining to do so.

Affirmed.

Judges JOHNSON and PHILLIPS concur.