HIGH ROCK LAKE PARTNERS, LLC, A NORTH CAROLINA LIMITED LIABILITY COMPANY, AND JOHN DOLVEN, PETITIONERS v. NORTH CAROLINA DEPARTMENT OF TRANSPORATION, RESPONDENT

No. COA11-309

(Filed 20 December 2011)

**1. Administrative Law—petition for judicial review—not timely—good cause shown**

The trial court did not abuse its discretion by accepting High Rock's untimely petition for judicial review of Department of Transportation's denial of a driveway permit application. An untimely petition may be accepted for review under N.C.G.S. § 150(b)-45(b) for good cause shown.

**2. Highways and Streets—driveway permit—conditions—statute not applicable**

Petitioners' argument that the conditions imposed by DOT for granting a driveway permit were in excess of the authority granted to DOT by N.C.G.S. § 136-18(29) was overruled because that statute does not address the improvements involved in this case (a railroad crossing one-quarter mile away from the driveway connection point).

**3. Highways and Streets—driveway permit—conditions—no constitutional violation**

The trial court did not err by concluding that there was no constitutional violation in a Department of Transportation condition to a driveway permit a quarter mile from railroad tracks requiring that petitioner obtain the approval of the North Carolina Railroad (NCRR) and Norfolk Southern Corporation (NS). NCRR owned an easement over a section of the road, and NS operated and managed the crossing. The sovereign may restrict the right of entrance to reasonable and proper points to protect others who may be using the highway.

**4. Administrative Law—judicial review—motion to supplement the record**

The trial court did not err by denying petitioners' motion for leave to supplement the record where the deposition testimony that petitioner sought to include was not necessary for a determination of the issues brought forward on appeal.

Appeal by petitioners from judgment entered 24 November 2010 by Judge F. Lane Williamson in Mecklenburg County Superior Court and cross-appeal by respondent from order entered 8 May 2008 by Judge Jesse B. Caldwell, III in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 September 2011.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Craig D. Justus, for petitioners.*

*Roy Cooper, Attorney General, by James M. Stanley, Jr. and Scott K. Beaver, Assistant Attorneys General, for respondent.*

MARTIN, Chief Judge.

Petitioners, High Rock Lake Partners, LLC (High Rock) and John Dolven, appeal from the superior court's judgment affirming the deci-

sion of the DOT Driveway Permit Appeals Committee (the committee) and denying High Rock's motion to supplement the record. Respondent, the North Carolina Department of Transportation (DOT), cross-appeals from the interlocutory order entered 8 May 2008 finding " 'good cause' shown for the Petitioner to file an untimely Petition for Judicial Review from the Department's Final Agency Decision."

On 12 August 2005, the predecessor entity to High Rock purchased a parcel of real property (the property) consisting of approximately 188 acres, located on High Rock Lake in Davidson County. The property is a peninsula. Vehicular access is provided by Secondary Road 1135 (SR 1135), known locally as Southern Railroad Station Road, which is part of the state highway system maintained by DOT. SR 1135 crosses railroad tracks.

Norfolk Southern Corporation (NS) operates a regional hump station abutting the property. According to the developer, North Carolina Railroad Company (NCRR), a railroad company chartered by the North Carolina General Assembly, owns an easement over the railroad crossing, subject to DOT's right-of-way on SR 1135. According to DOT, NCRR owns a right-of-way that is intersected by SR 1135, but "DOT has no recorded right-of-way agreement for right-of-way for SR 1135 within the NCRR rail corridor." According to DOT, "NS maintains the surface of the actual railroad crossing immediately approaching and over the railroad tracks." According to the developer, NS operates and manages the railroad crossing and related rail lines under an agreement with NCRR.

On 9 September 2005, High Rock submitted an application to Davidson County for preliminary plat approval of a proposed subdivision development on the property to contain 60 "single-family," "residential lots." On 20 September 2005, the Davidson County Planning and Zoning Board held a meeting regarding the preliminary plat and, on 4 October 2005, met again and denied approval. High Rock appealed to the Davidson County Board of Commissioners. The commissioners held a public hearing on the matter in November 2005, continued the hearing, reconvened on 12 December 2005, and approved the preliminary plat based on High Rock meeting all the County requirements for subdivision approval.

Meanwhile, on 6 October 2005, High Rock submitted a Driveway Permit Application to DOT, requesting to connect a drive to SR 1135 to access the proposed subdivision. The aforementioned railroad

crossing is located approximately one-quarter mile from petitioners' proposed connection with SR 1135. In December 2005, DOT District Engineer Chris Corriher denied High Rock's application. By letter dated 11 January 2006, High Rock appealed to DOT Division Engineer Pat Ivey. By letter dated 3 March 2006, subject to the following conditions, Ivey approved the application:

> Widen the [SR 1135] railroad crossing of the North Carolina Railroad Company (NCRR) corridor from its existing width of approximately 14 feet to 24 feet to allow for safe passage of two-way traffic traversing the railroad. Said widening shall include additional right-of-way acquisition, relocation and acquisition of the flashers and gates and paving of the crossing and approaches to accommodate enhanced safety devices at the crossing.

> Obtain all required licenses and approvals from the <u>owning</u> railroad, NCRR, to widen the crossing and approaches on their right of way.

> Obtain all necessary agreements and approvals from the <u>operating</u> railroad, Norfolk Southern Railway Company (NSR), necessary to revise and acquire the automatic flashers, gates and enhanced devices that will enable the crossing to remain at the current 'Sealed Corridor' level of safety consistent with the USDOT designation of the corridor for development of high-speed intercity passenger rail service. This may include, but not be limited to, the installation of a median separator or gate configuration per NCDOT and NSR specifications.

> Widen [SR 1135] from the railroad crossing to the new subdivision entrance to safely accommodate two-way vehicular traffic.

> All expenses and costs associated with the subject improvements shall be borne by the applicant.

Included with a letter dated 17 March 2006, High Rock provided NS a copy of Ivey's decision and asked if it and NCRR would "cooperate with [High Rock] and the DOT as to the improvements described in the DOT Letter? If so, what will it involve? If not, then why?" NS responded by letter dated 3 April 2006, stating in relevant part that, "any proposal to widen or improve the existing crossing that does not include a grade separation would be unacceptable."

By letter dated 30 March 2006, High Rock appealed to the committee. The committee met on 5 May 2006. By letter dated 12 June 2006, the committee voted unanimously to uphold the conditions.

On 17 September 2007, High Rock filed a Petition for Judicial Review in Mecklenburg County Superior Court under N.C.G.S. § 150B-43. On 25 November 2007, DOT filed a response to High Rock's petition. On 20 June 2008, High Rock filed a Motion for Joinder of Necessary Party, John Dolven, M.D., stating that Dolven had acquired the property following a foreclosure proceeding and that High Rock had assigned its Driveway Permit and Appeal Rights to Dolven while reserving its right to remain a party in the case. The same day, High Rock filed a Motion for Leave to Supplement the Record. DOT filed responses contesting both motions. On 1 November 2010, on remand from this Court's decision in *High Rock Lake Partners, LLC v. North Carolina Department of Transportation*, ___ N.C. App. ___, 693 S.E.2d 361 (2010), which vacated an order of the superior court denying High Rock's motion for joinder/intervention, Judge L. Lane Williamson entered an order joining Dolven as a party petitioner to the action.

---

**[1]** We first address DOT's contention addressed on its cross-appeal: that the superior court erred by granting High Rock's untimely Petition for Judicial Review. DOT argues, essentially, that by allowing High Rock's untimely petition, the superior court applied an erroneous definition to the term "good cause" contained in N.C.G.S. § 150B-45.

"To obtain judicial review of a final decision under . . . Article [4 of the Administrative Procedure Act], the person seeking review must file a petition within 30 days after the person is served with a written copy of the decision." N.C. Gen. Stat. § 150B-45(a) (2009). "A person who fails to file a petition within the required time waives the right to judicial review under this Article. For *good cause shown*, however, the superior court *may* accept an untimely petition." N.C. Gen. Stat. § 150B-45(b) (emphasis added). The determination of whether good cause exists is addressed to the sound discretion of the trial judge. *See Frye v. Wiles*, 33 N.C. App. 581, 583, 235 S.E.2d 889, 891 (1977) (stating that the determination of whether good cause exists to vacate an entry of default is addressed to the sound discretion of the trial judge). We will not disturb "[t]he judge's exercise of that discretion" "unless a clear abuse of discretion is shown." *See id.*

The parties agree that if Davidson County had been High Rock's place of residence, High Rock's petition would have been timely. The Davidson County Superior Court dismissed High Rock's petition and High Rock refiled in the correct county, Mecklenburg. There, the

superior court, "in its discretion," concluded that, under N.C.G.S. § 150B-45, there was "good cause shown" "to accept Petitioner's untimely New Petition." In support of its decision, the superior court made the following relevant findings:

> 12. Petitioner was diligent in its attempts to have the merits of the DOT's final agency decision litigated and decided by the Superior Court of North Carolina.

> 13. . . . . [T]here is little material harm to the DOT from any delay in having the petition untimely filed in Mecklenburg County.

> 14. If the Respondents' motion to dismiss related to the timeliness of the New Petition is granted, the Petitioner will suffer a grave injustice by being unable to prosecute this action as to the merits of the DOT's final agency decision and the potential *res judicata* effect of such dismissal.

These findings and the superior court's conclusion do not demonstrate "a clear abuse of discretion." *See Frye*, 33 N.C. App. at 583, 235 S.E.2d at 891. Thus, we decline to disturb the trial court's order accepting High Rock's Petition for Judicial Review.

We now address petitioners' issues on appeal. N.C.G.S. § 150B-51(b) authorizes a trial court to reverse or modify an agency's decision if the substantial rights of the petitioner have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under [N.C.G.S. §§ ] 150B–29(a), 150B–30, or 150B–31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2009) (amended by Section 27 of Session Law 2011-398 and applying to contested cases commenced on or after 1 January 2012). Appellate review of a superior court order regarding an agency decision involves "examin[ing] the trial court's order for

error of law." *McAdams v. N.C. Dep't of Transp.*, ___ N.C. App. ___, ___, 716 S.E.2d 77, 82 (2011). "The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Id.* at ___, 716 S.E.2d at 82. "Where the party alleges the agency violated subsections one through four of N.C. Gen. Stat. § 150B-51, the court engages in *de novo* review, reviewing for errors of law." *Comm'r of Labor v. Weekley Homes, L.P.*, 169 N.C. App. 17, 20, 609 S.E.2d 407, 411, *motion to dismiss appeal allowed, disc. review denied*, 359 N.C. 629, 616 S.E.2d 227 (2005).

**[2]** Petitioners first contend the conditions imposed by DOT were in excess of DOT's authority under N.C.G.S. § 136-18(29). We therefore limit our review of this issue to determining whether DOT exceeded its authority under N.C.G.S. § 136-18(29).

Reviewing petitioners' "legal arguments concerning the Department's statutory and constitutional authority to impose conditions on the issuance of the driveway permit" de novo, the superior court concluded the following:

> 4. The Court rejects the Petitioners' argument that the Department acted in excess of its statutory authority in conditioning the issuance of the Driveway Permit upon the Petitioners' construction of improvements to the railroad crossing offsite on SR 1135, as well as the argument that the Department cannot require offsite improvements not specifically mentioned in N.C. Gen. Stat. 136-18(29).

> 5. The Court concludes that N.C. Gen. Stat. 136-18(29), which in the Court's opinion is ambiguous, must be construed *in pari materia* with N.C. Gen. Stat. 136-18(5) and N.C. Gen. Stat. 136-93, which include a broad grant of general powers to the Department to regulate the State Highway System and to enact rules, regulations and ordinances governing the use of the State Highway System.

> 6. While the Court has given some deference to the Depart-ment's interpretation of the scope of its regulatory authority, the Court does not rely upon this interpretation as determinative.

> 7. . . . [T]he conditions in the Driveway Permit that are contingent upon the Petitioner's obtaining the approval of the owning and operating railroads to widen the crossing that is

located on the railroads' property are not an unlawful or unconstitutional delegation.

8. The court concludes that the Department did not exceed its statutory powers in issuing the conditional Driveway Permit to the Petitioners and that the Department's actions were not unconstitutional.

. . . .

11. The Court finds that the Department did not act arbitrarily and capriciously by including conditions in the Driveway Permit that were based upon valid safety concerns supported by substantial evidence of record.

Questions of law are reviewed de novo. *See Weekley Homes*, 169 N.C. App. at 20, 609 S.E.2d at 411. Our review of the superior court's determination is also de novo. *See id.*

Petitioners mainly argue for application of the following principle:

[W]here one statute deals with the subject matter in detail with reference to a particular situation and another statute deals with the same subject matter in general and comprehensive terms, the particular statute will be construed as controlling in the particular situation unless it clearly appears that the General Assembly intended to make the general act controlling in regard thereto, especially when the particular statute is later enacted.

*N.C. Bd. of Exam'rs v. N.C. State Bd. of Educ.*, 122 N.C. App. 15, 19, 468 S.E.2d 826, 829 (1996) (emphasis omitted), *aff'd in part, disc. review improvidently allowed in part*, 345 N.C. 493, 480 S.E.2d 50 (1997). Petitioners contend N.C.G.S. § 136-18(29) deals with DOT's authority with respect to driveway connections and N.C.G.S. §§ 136-18(5) and 136-93 deal with DOT's authority generally. Petitioners contend N.C.G.S. § 136-18(29) is therefore controlling, N.C.G.S. § 136-18(29) does not authorize the conditions in this case, and DOT exceeded its authority by imposing the conditions. We hold N.C.G.S. § 136-18(29) does not apply to the conditions in this case.

In upholding the conditions imposed by Ivey, the committee referenced the following, excerpted from its Policy for Street and Driveway Access to North Carolina Highways:

At those locations where it is determined by NCDOT that a street or driveway connection requires improvements to existing highway facilities to provide for safe and efficient traffic operation,

the applicant may be fully responsible for roadway improvements. These improvements may include, but are not limited to, separate turn lanes, deceleration lanes, acceleration lanes, lane tapers and transitions, right-of-way to contain new widening, and traffic signals. Generally, these improvements are necessitated by the development and will be used primarily by traffic destined for establishments within the development, or traffic affected by the development.

The NCDOT may require the applicant to provide offsite roadway improvements on public facilities in order to mitigate any negative traffic impacts created by the proposed development. Boundaries for offsite improvements, including intersections and public roadways to be considered, will be identified in the [Traffic Impact Study] or determined by the District Engineer.

Its decision then states that, "[s]ince the increase in traffic at the crossing is caused solely by the proposed development, and widening of the crossing is necessary to protect the safety of the traveling public, our Committee agreed with the Division Engineer's decision."

Section 136-18(29), which has not previously been interpreted by our Courts, provides the following:

(29) The Department of Transportation may establish policies and adopt rules about the size, location, direction of traffic flow, and the construction of driveway connections into any street or highway which is a part of the State Highway System. The Department of Transportation may require the construction and public dedication of acceleration and deceleration lanes, and traffic storage lanes and medians by others for the driveway connections into any United States route, or North Carolina route, and on any secondary road route with an average daily traffic volume of 4,000 vehicles per day or more.

N.C. Gen. Stat. § 136-18(29) (2009).

The first sentence of N.C.G.S. § 136-18(29) does not apply to the conditions. The conditions in this case do not involve the actual "driveway connection." They do not involve the "size," "location," or "direction of traffic flow" of a driveway connection. Nor do they involve the "construction" of a driveway connection. The challenged conditions require improvements to a portion of a road and a railroad crossing located approximately one-quarter mile from the portion of SR 1135 where the proposed "driveway connection" will be located.

The second sentence of N.C.G.S. § 136-18(29) is similarly inapplicable to the conditions. The conditions in this case clearly do not involve acceleration or deceleration lanes, traffic storage lanes, or medians.

Petitioners attempt to convince this Court that the holding in *National Medical Enterprises, Inc. v. Sandrock*, 72 N.C. App. 245, 324 S.E.2d 268 (1985), is instructive here. In *Sandrock*, a county sought to lease hospital facilities to a for-profit company. *Id.* at 246, 324 S.E.2d at 269. There, "a general statute cover[ed] the lease or rental of surplus property by a . . . county for less than ten years" and provided, "Any property owned by a [county] may be leased or rented for such terms and upon such conditions as the [commissioners] may determine . . . ." *Id.* at 248-49, 324 S.E.2d at 270-71 (alterations in original). Another statute, part of the Municipal Hospital Facilities Act, specifically addressed the leasing of hospital facilities. *Id.* at 248, 324 S.E.2d at 270-71. It provided, "A [county] may lease any hospital facilities to any nonprofit association . . . ." *Id.* at 248, 324 S.E.2d at 271 (alteration in original). This Court applied the rule of statutory construction that

> [w]here one statute deals with the subject matter in detail with reference to a particular situation and another statute deals with the same subject matter in general and comprehensive terms, the particular statute will be construed as controlling the particular situation unless it clearly appears that the General Assembly intended to make the general act controlling in regard thereto . . . .

*Id.* at 249, 324 S.E.2d at 271 (internal quotation marks omitted). We added, "Where there are two provisions in a statute, one of which is special or particular and the other general, which, if standing alone, would conflict with the particular provision, the special will be taken as intended to constitute an exception to the general provisions, as the General Assembly is not to be presumed to have intended a conflict." *Id.* (internal quotation marks omitted). Then, applying the provisions of the statute specifically addressing the leasing of hospital facilities, we held "[t]he inclusion of statutory authority to lease to nonprofit associations . . . operates to exclude authority to lease to for-profit corporations." *Id.* at 249-50, 324 S.E.2d at 271.

However, unlike the more specific statute at issue in *Sandrock*, which addressed the leasing of hospital facilities and therefore governed the lease of the hospital in that case, N.C.G.S. § 136-18(29) does not address improvements away from a driveway connection. Thus, the holding in *Sandrock* does not support petitioners' argument.

Because we hold N.C.G.S. § 136-18(29) does not address the improvements, petitioners' argument is overruled. *See State ex rel. Utils. Comm'n v. Empire Power Co.*, 112 N.C. App. 265, 272, 435 S.E.2d 553, 556 (1993) ("[S]ections 62-110.1 and 62-82 do not provide the Commission with complete instructions for the process of awarding and denying certificates to applicants. Therefore, the Commission may turn to the more general sections of Chapter 62, specifically, N.C. Gen. Stat. § 62-31 (1989) and N.C. Gen. Stat. § 62-60 (1989), for guidance in interpreting the process not addressed in sections 62-82 and 62-110.1."), *disc. review denied*, 335 N.C. 564, 441 S.E.2d 125 (1994).

We note petitioners also state "[t]here is no statute setting forth standards for DOT's authority to impose upon Petitioners the duty to make improvements to the Railroad Crossing on SR 1135 located well away from the proposed driveway connection point." Petitioners contend N.C.G.S. §§ 136-18(5) and 136-93 fail "to specify any standards or conditions curtailing DOT's perceived ability to impair an abutter's property right of access" and suggest the General Assembly abdicated its power to make laws to DOT. In response, we note, "[t]he general purpose of the Department of Transportation is to provide for the necessary planning, construction, maintenance, and operation of an integrated statewide transportation system for the economical and *safe transportation of people and goods as provided for by law.*" N.C. Gen. Stat. § 143B-346 (2009) (emphasis added). In N.C.G.S. § 136-18(5), the General Assembly gave DOT the power:

> (5) To make rules, regulations and ordinances for the use of . . . the State highways, and to prevent their abuse by individuals, corporations and public corporations, by trucks, tractors, trailers or other heavy or destructive vehicles or machinery, or by any other means whatsoever, and to provide ample means for the enforcement of same . . . .

N.C. Gen. Stat. § 136-18(5) (2009). It also provided, in N.C.G.S. § 136-93, that,

> No opening or other interference whatsoever shall be made in any State road or highway . . . except in accordance with a written permit from the Department of Transportation or its duly authorized officers, *who shall exercise complete and permanent control over such roads and highways.* . . .

N.C. Gen. Stat. § 136-93 (2009) (amended by Section 1 of Session Law 2011-397 and applying to permit applications or renewals submitted

or offenses occurring on or after 1 September 2011) (emphasis added). The Policy on Street and Driveway Access to North Carolina Highways, from which DOT derived its power to impose the conditions in this case, states, "WHEREAS, GS 136-18(5) and GS 136-93 grants [sic] the Board of Transportation authority to make rules, regulations, and ordinances for use on the State highways; and including street and driveway access to State highways . . . ." With the foregoing in mind, and having carefully examined the authorities petitioners cite in brief, we find no merit to their suggestion.

[3] Petitioners next contend the superior court erred in concluding the condition of obtaining the approval of NCRR and NS did not deprive them of the use of their property in violation of the North Carolina and United States Constitutions, relying on broad principles extrapolated from *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 73 L. Ed. 210 (1928) and *Bulova Watch Company, Inc. v. Brand Distributors*, 285 N.C. 467, 206 S.E.2d 147 (1974). "While [an] abutting [property] owner has a right of access, the manner in which that right may be exercised is not unlimited . . . . To protect others who may be using the highway, the sovereign may restrict the right of entrance to reasonable and proper points." *State Highway Comm'n v. Raleigh Farmers Mkt., Inc.*, 263 N.C. 622, 625, 139 S.E.2d 904, 906, *reaffirmed by* 264 N.C. 139, 141 S.E.2d 10 (1965). Although DOT conditioned the driveway permit on approval from NCRR and NS, NCRR has a property interest in the section of SR 1135 that intersects with the railroad tracks; NCRR owns an easement or a right-of-way over that section. According to the developer, NS operates and manages the crossing. *Compare Bulova*, 285 N.C. at 471-77, 206 S.E.2d at 145-48 (holding a statute an unconstitutional delegation of legislative power where the statute essentially allowed a private corporation to restrict the right of one not a party to a contract from selling its product based simply on the product carrying the private corporation's trade name, where nothing in the record suggested that any non-party had acquired any product through breach of the contract between the corporation and the supplier). Furthermore, petitioners fail to raise as an issue in their brief on appeal a challenge to the merits of the condition imposed by NS—the developer does not dispute that its proposed development, a 60-home subdivision estimated to increase the average daily traffic from 32 to approximately 600, necessitates the grade separation required by NS. *Compare Roberge*, 278 U.S. at 121-22, 73 L. Ed. at 213-14 (holding that an ordinance restricting an owner's use of its property by requiring consent

of neighboring landowners for that use, *which was otherwise an acceptable use of the property and not an issue of public safety*, was an unconstitutional delegation of power to neighboring landowners and, further, noting it was "not suggested that the [owner's] proposed [use] would be a nuisance" to neighboring landowners). The broad principles upon which petitioners rely for their argument are not persuasive. This issue is overruled.

Because we hold N.C.G.S. § 136-18(29) does not apply to the conditions DOT imposed, we do not address petitioners' arguments that (1) DOT's regulating "in excess of its statutory authority" was arbitrary and capricious and in violation of due process and, (2) petitioners are entitled to have the railroad crossing conditions stricken from the driveway permit as a result of unauthorized conditions.

[4] Finally, petitioners contend the superior court abused its discretion by denying High Rock's Motion for Leave to Supplement the Record under N.C.G.S. 150B-47, which provides, "The court may require or permit subsequent corrections or additions to the record when deemed desirable." *See* N.C. Gen. Stat. § 150B-47 (2009) (amended by Section 24 of Session Law 2011-398 and applying to contested cases commenced on or after 1 January 2012). After the Mecklenburg County Superior Court accepted High Rock's untimely petition, High Rock filed a Motion for Leave to Supplement the Record with transcripts of deposition testimony by Stephen Patrick Ivey, Christopher T. Corriher, Paul C. Worley, and John H. Corbett. According to High Rock, the testimony would have "assist[ed] th[e] [trial] [c]ourt in clarifying and explaining the relevancy and meaning of many of the documents previously submitted as part of the DOT record." However, the deposition testimony is not necessary for a determination of the issues petitioners bring forward on appeal. This issue is overruled.

Affirmed.

Judges BRYANT and CALABRIA concur.