HIGH ROCK LAKE PARTNERS, LLC, a North Carolina Limited Liability Company, and JOHN DOLVEN, Petitioners v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Respondent

No. 262PA10-2

(Filed 14 December 2012)

**Highways and Streets— driveway connection—conditions— railroad crossing improvement**

The Department of Transportation (DOT) acted in excess of its statutory authority when it conditioned plaintiff High Rock's driveway permit on widening a railroad crossing one-quarter of a mile away from the driveway connection and on High Rock's obtaining consent from two railroad companies. The Driveway Permit Statute (N.C.G.S. § 136-18(29)) specifically and unambiguously provides an exclusive list of how DOT may regulate driveway connections, as well as an exclusive list of improvements it may require of an applicant. The statute is specific, clear, and unambiguous; statutory construction is not permitted. DOT's constitutional arguments were not addressed because the case was decided on statutory grounds.

On discretionary review pursuant to N.C.G.S. § 7A 31 of a unanimous decision of the Court of Appeals, —— N.C. App. ——, 720 S.E.2d 706 (2011), affirming an order entered on 8 May 2008 by Judge Jesse

B. Caldwell, III and a judgment entered on 24 November 2010 by Judge F. Lane Williamson, both in Superior Court, Mecklenburg County. Heard in the Supreme Court on 4 September 2012.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Craig D. Justus, for petitioner-appellants.*

*Roy Cooper, Attorney General, by James M. Stanley, Jr. and Scott K. Beaver, Assistant Attorneys General, for respondent-appellee.*

NEWBY, Justice.

In this case we consider whether the North Carolina Department of Transportation (DOT) acted within its powers when it conditioned driveway access to a public road on the owner's (1) making improvements to a railroad crossing one-quarter of a mile away from the proposed driveway connection and (2) obtaining the owning and operating railroads' consent to the improvements. Section 136-18(29) of our General Statutes, the Driveway Permit Statute, lists the actions that DOT may demand in exchange for access to the public highway system. Since the conditions imposed by DOT in this case are not authorized by that statute, we hold that DOT exceeded its authority when it issued the conditional permit. Accordingly, we reverse the decision of the Court of Appeals.

In August 2005 the predecessor entity to High Rock Lake Partners, LLC (High Rock) purchased 188 acres in Davidson County with the intention of developing a lakefront subdivision. The property, which forms a peninsula, is partially surrounded by High Rock Lake. After finding the property was suitable for development, the Davidson County Board of Commissioners granted preliminary plat approval for sixty, single-family lots.

The property is accessed via State Road 1135 (SR 1135). SR 1135 crosses two sets of railroad tracks and travels another one-quarter of a mile before it dead-ends into High Rock's property. The crossing is fourteen feet wide and is protected by gates and flashing red lights. The crossing is "at-grade," meaning vehicles must drive on the tracks rather than crossing via a "grade separation," where cars travel under the tracks through a tunnel or over the crossing on a bridge. The North Carolina Railroad Company owns an easement over SR 1135 on which the crossing is located, and the Norfolk Southern Railway Company operates and manages the crossing and related rail lines and a switching yard near High Rock's property.

**HIGH ROCK LAKE PARTNERS, LLC v. N.C. DEP'T OF TRANSP.**

[366 N.C. 315 (2012)]

High Rock sought a driveway permit from DOT to connect its proposed subdivision's system of roads to SR 1135. The railroad companies opposed the permit, claiming that the rail traffic at the crossing, located approximately one-quarter of a mile away from the proposed driveway connection, might pose a safety hazard to future residents. As a result, DOT District Engineer Chris Corriher denied the permit.

High Rock appealed to DOT Division Engineer S.P. Ivey. He granted the permit request, subject to the following conditions:

Widen the SR1135 railroad crossing of the North Carolina Railroad Company (NCRR) corridor from its existing width of approximately 14 feet to 24 feet to allow for safe passage of two-way traffic traversing the railroad. Said widening shall include additional right-of-way acquisition, relocation and acquisition of the flashers and gates and paving of the crossing and approaches to accommodate enhanced safety devices at the crossing.

Obtain all required licenses and approvals from the owning railroad, NCRR, to widen the crossing and approaches on their right of way.

Obtain all necessary agreements and approvals from the operating railroad, Norfolk Southern Railway Company (NSR), necessary to revise and acquire the automatic flashers, gates and enhanced devices that will enable the crossing to remain at the current "Sealed Corridor" level of safety consistent with the USDOT designation of the corridor for development of high-speed intercity passenger rail service. This may include, but not be limited to, the installation of a median separator or gate configuration per NCDOT and NSR specifications.

Widen SR1135 from the railroad crossing to the new subdivision entrance to safely accommodate two-way vehicular traffic.

All expenses and costs associated with the subject improvements shall be borne by the applicant.

High Rock first attempted to satisfy the permit conditions; however, High Rock was unsuccessful in obtaining the railroad companies' approval. Both companies refused to consent to any proposal to widen or improve the existing crossing that retained an at-grade crossing.

High Rock then sought relief from the Driveway Permit Appeals Committee, where High Rock argued that DOT lacked the statutory

authority to condition its driveway permit on the completion of improvements to the railroad crossing one-quarter of a mile away from the entrance to the proposed subdivision. High Rock informed the Committee that the railroad companies refused to consent to a plan that included an at-grade crossing and that High Rock otherwise lacked the means to meet the railroads' demand that High Rock build a grade separation (a bridge). According to High Rock, such an undertaking would cost in excess of three million dollars. Nevertheless, on 12 June 2006, the Committee denied High Rock's appeal and upheld the conditions set forth in the permit.

On 17 September 2007, High Rock filed a Petition for Judicial Review in Superior Court, Mecklenburg County, arguing that DOT lacked the authority to issue a driveway permit subject to these conditions. The trial court ruled in favor of DOT and found that the agency acted within the scope of its powers. On appeal, the Court of Appeals agreed and held that no statute specifically addresses DOT's authority to mandate improvements away from a proposed driveway connection. *High Rock Lake Partners, LLC v. N.C. DOT*, ⸻ N.C. App. ⸻, ⸻, 720 S.E.2d 706, 711-13 (2011). Without a specific statute to rely on, the Court of Appeals looked to DOT's general statutory power to exercise control over roads and highways and its broad authority to make rules ensuring safe travel. *Id.* at ⸻, 720 S.E.2d at 712. Applying these general grants of power, the Court of Appeals concluded that DOT possessed the power it claims in this case. *Id.* at ⸻, 720 S.E.2d at 712. High Rock then petitioned this Court for discretionary review, which we allowed.

We must now determine whether DOT has the authority to condition a driveway permit on the applicant's completing off-site improvements and obtaining the consent of a third party. High Rock contends that the Driveway Permit Statute controls the outcome of this case. According to High Rock, the plain language of that statute does not grant DOT the power to condition a driveway permit on an applicant's improving an off-site railroad crossing or obtaining another property owner's consent. Conversely, DOT argues that it acted within the scope of its general authority and in accordance with its own policies. Therefore, to resolve this issue we must ascertain the extent of DOT's power to regulate driveway connections.

As a state administrative agency, DOT "is an inanimate, artificial creature of statute. Its form, shape, and authority are defined by the Act by which it was created. It is as powerless to exceed its authority as is a robot to act beyond the limitations imposed by its own mech-

anism." *Schloss v. State Highway & Pub. Works Comm'n*, 230 N.C. 489, 492, 53 S.E.2d 517, 519 (1949)). The DOT "possesses only those powers expressly granted to it by our legislature or those which exist by necessary implication in a statutory grant of authority." *Lee v. Gore*, 365 N.C. 227, 230, 717 S.E.2d 356, 359 (2011).

"[T]he responsibility for determining the limits of statutory grants of authority to an administrative agency is a judicial function for the courts to perform." *In re Broad & Gales Creek Cmty. Ass'n*, 300 N.C. 267, 280, 266 S.E.2d 645, 654 (1980) (citing *Garvey v. Freeman*, 397 F.2d 600 (10th Cir. 1968)); *see also Wells v. Consol. Jud'l Ret. Sys. of N.C.*, 354 N.C. 313, 319, 553 S.E.2d 877, 881 (2001) ("[I]t is ultimately the duty of courts to construe administrative statutes; courts cannot defer that responsibility to the agency charged with administering those statutes."). In making this determination we apply the enabling legislation practically so that the agency's powers include all those the General Assembly intended the agency to exercise. *In re Broad & Gales*, 300 N.C. at 280, 266 S.E.2d at 655. We give great weight to an agency's interpretation of a statute it is charged with administering, *e.g.*, *Frye Reg'l Med. Ctr., Inc. v. Hunt*, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999); *Wells*, 354 N.C. at 319-20, 553 S.E.2d at 881; however, "an agency's interpretation is not binding," *Lee*, 365 N.C. at 229-30, 717 S.E.2d at 358 (citations omitted). And, "[u]nder no circumstances will the courts follow an administrative interpretation in direct conflict with the clear intent and purpose of the act under consideration." *Watson Indus., Inc. v. Shaw*, 235 N.C. 203, 211, 69 S.E.2d 505, 511 (1952) (citations omitted).

Generally speaking, DOT is an administrative agency created by the legislature to manage the public highway system. *See* N.C.G.S. § 136-51 (2011). The DOT is charged with providing "for the necessary planning, construction, maintenance, and operation of an integrated statewide transportation system for the economical and safe transportation of people and goods as provided for by law." *Id.* § 143B-346 (2011). The DOT is not, however, omnipotent; our General Assembly has extensively defined and limited DOT's authority through the enactment of numerous other statutes. *See, e.g., id.* § 136-18 (2011). Thus, DOT possesses only those enumerated powers along with any implied powers necessary to fulfill the agency's purpose. *See Lee*, 365 N.C. at 230, 717 S.E.2d at 359.

The General Assembly has spoken specifically regarding DOT's power to regulate driveway connections to private property. In 1987 the legislature enacted the Driveway Permit Statute. Act of June 8,

1987, ch. 311, 1987 N.C. Sess. Laws 401 ("An Act to Provide for Driveway Permit Process"). That statute, now codified at N.C.G.S. § 136-18(29), states:

> The Department of Transportation may establish policies and adopt rules about the size, location, direction of traffic flow, and the construction of driveway connections into any street or highway which is a part of the State Highway System. The Department of Transportation may require the construction and public dedication of acceleration and deceleration lanes, and traffic storage lanes and medians by others for the driveway connections into any United States route, or North Carolina route, and on any secondary road route with an average daily traffic volume of 4,000 vehicles per day or more.

This statute authorizes DOT to require applicants to construct and dedicate to the public use certain improvements in exchange for driveway access to, *inter alia*, secondary roads that average at least 4,000 cars per day. Those improvements are acceleration and deceleration lanes, traffic storage lanes, and medians. The statute additionally empowers DOT to establish policies and adopt rules that regulate the size, location, direction of traffic flow, and construction of connections of a private driveway to a public road. The terms of the statute authorize no further DOT regulation of driveway connections and do not permit the denial of reasonable access to the public highway system.

The Driveway Permit Statute balances the public interest in a safe highway system with an owner's right of access. "[T]he owner of land abutting a highway has a right beyond that which is enjoyed by the general public, a special right of easement in the highway for access purposes." *Snow v. N.C. State Highway Comm'n*, 262 N.C. 169, 173, 136 S.E.2d 678, 682 (1964). The right of access has long been recognized as one of the most important property rights. *See White v. Nw. N.C. R.R. Co.*, 113 N.C. 444, 446, 113 N.C. 611, 613, 18 S.E. 330, 330-31 (1893). Like most rights, though, it is subject to reasonable regulation to protect the public safety and welfare. Further, "[i]t is understood that absolute equality of convenience cannot be achieved, and those who take up their residence or purchase and occupy property in proximity to public roads or streets do so with notice that they may be changed as demanded by the public interest." *Sanders v. Town of Smithfield*, 221 N.C. 166, 170-71, 19 S.E.2d 630, 633 (1942). To ensure that entry onto and exit from our highway system are conducted in a safe manner, DOT is authorized to regulate

the size, location, direction of traffic flow, and construction of all driveway connections. The DOT can also mandate certain enumerated improvements on roads with higher traffic levels. To be clear, DOT has the authority under this statute to regulate the right of access, not completely eliminate it.

The conditions imposed by DOT in this case are not permitted under the Driveway Permit Statute. The statute authorizes no requirement to make improvements away from the applicant's property. It similarly fails to empower DOT to require an applicant to obtain another property owner's approval, giving that property owner veto power over the applicant's project as happened here. Consequently, we hold that DOT acted in excess of its statutory authority when it conditioned High Rock's driveway permit on widening a railroad crossing one-quarter of a mile away from the driveway connection and on High Rock's obtaining consent from two railroad companies.

To conclude otherwise would harm other common law property rights that this Court has a duty to protect. *See Morris Commc'ns Corp. v. City of Bessemer Zoning Bd. of Adjust.*, 365 N.C. 152, 157, 712 S.E.2d 868, 871 (2011) ("This Court has long held that governmental restrictions on the use of land are construed strictly in favor of the free use of real property." (citations omitted)); *State v. Haynie*, 169 N.C. 277, 282, 84 S.E. 385, 387 (1915) ("Statutes which restrict private rights or the use of property, and especially those which tend to destroy them, should be strictly construed in favor of the citizen." (citations omitted)). These rights include the right to freely use one's property in a lawful manner, *Vance S. Harrington & Co. v. Renner*, 236 N.C. 321, 324, 72 S.E.2d 838, 840 (1952), the right to improve one's property, 1 Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina* § 1.04 (6th ed. Nov. 2011), and one's right to "the use and enjoyment of public highways," *see Price v. Edwards*, 178 N.C. 493, 500, 101 S.E. 33, 37 (1919), as well as due process rights that protect property owners from state delegations of power that give neighbors the authority to regulate the way another person uses his or her own property, *Wash. ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 122, 49 S. Ct. 50, 52, 73 L. Ed. 210, 214 (1928) ("The delegation of power so attempted is repugnant to the due process clause of the Fourteenth Amendment."); *Eubank v. City of Richmond*, 226 U.S. 137, 143-44, 33 S. Ct. 76, 77, 57 L. Ed. 156, 159 (1912) ("The statute and ordinance, while conferring the power on some property holders to virtually control and dispose of the proper rights of others, creates no standard by which the power thus given

is to be exercised; in other words, the property holders who desire and have the authority to establish the line may do so solely for their own interest or even capriciously."). The plain language of the Driveway Permit Statute is entirely consistent with these rights.

Nonetheless, DOT contends that it acted under its general grant of power to "make rules, regulations and ordinances for the use of, and to police traffic on, the State highways," N.C.G.S. § 136-18(5), and consistently with its general authority to "exercise complete and permanent control over such roads and highways," *id.* § 136-93 (2011). According to DOT, when construed *in pari materia* with the Driveway Permit Statute, these general grants of power conferred upon it the authority to enact its "Policy on Street and Driveway Access to North Carolina Highways," under which it issued High Rock's conditional permit.

The DOT's argument, however, ignores the plain language of the Driveway Permit Statute. This Court adheres to the long-standing principle that when two statutes arguably address the same issue, one in specific terms and the other generally, the specific statute controls. *State ex rel. Utils. Comm'n v. Edmisten*, 291 N.C. 451, 465, 232 S.E.2d 184, 193 (1977) (citing, *inter alia, State v. Baldwin*, 205 N.C. 174, 170 S.E. 645 (1933)). And when that specific statute is clear and unambiguous, we are not permitted to engage in statutory construction in any form. This Court may not construe the statute in pari materia with any other statutes, including those that treat the same issue generally. The Driveway Permit Statute specifically and unambiguously provides an exclusive list of how DOT may regulate driveway connections, as well as an exclusive list of improvements it may require of an applicant. *See State ex rel. Hunt v. N.C. Reins. Facil.*, 302 N.C. 274, 290, 275 S.E.2d 399, 407 (1981) ("Where a statute sets forth one method for accomplishing a certain objective, or sets forth the instances of its application or coverage, other methods or coverage are necessarily excluded . . . ." (citation and quotation marks omitted)). Because the Driveway Permit Statute treats an owner's access to the state highway system in specific terms, and because it is clear and unambiguous, we are not permitted to engage in statutory construction. We may look no further than the statute's plain language to determine whether DOT possessed the power it claims in this case. Walker v. Bd. of Trs. of the N.C. Local Gov'tal Emps.' Ret. Sys., 348 N.C. 63, 65-66, 499 S.E.2d 429, 430-31 (1998) (citations omitted); Watson Indus., 235 N.C. at 211, 69 S.E.2d at 511 ("It is only in cases of doubt or ambiguity that the courts may allow themselves to

be guided or influenced by an executive construction of a statute." (citation and quotation marks omitted)).

High Rock also advances several constitutional claims. But because we base our holding on statutory grounds, we decline to address those arguments at this time. See Hughey v. Cloninger, 297 N.C. 86, 95, 253 S.E.2d 898, 904 (1979) ("Since this case is decided on statutory grounds, further discussion of the constitutional questions raised by this appeal is unnecessary." (citations omitted)).

In conclusion, the Driveway Permit Statute is a narrow grant of power under which DOT may regulate only certain aspects of driveway connections and require applicants to complete only certain improvements. The conditions placed on High Rock's driveway permit are not authorized under the plain language of that statute. Thus, we hold that DOT exceeded its statutory authority. Accordingly, the decision of the Court of Appeals is reversed, and this case is remanded to that court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.