IN THE SUPREME COURT OF NORTH CAROLINA

No. 380A17

Filed 7 December 2018

NORTH CAROLINA ACUPUNCTURE LICENSING BOARD

v.

NORTH CAROLINA BOARD OF PHYSICAL THERAPY EXAMINERS

Appeal pursuant to N.C.G.S. § 7A-27(a)(2) from an order and opinion on petition for judicial review dated 2 August 2017 entered by Judge Louis A. Bledsoe, III, Special Superior Court Judge for Complex Business Cases, in Superior Court, Wake County, after the case was designated a mandatory complex business case by the Chief Justice pursuant to N.C.G.S. § 7A-45.4(b). Heard in the Supreme Court on 18 April 2018.

> *Everett Gaskins Hancock LLP, by E.D. Gaskins, Jr., Katherine A. King, and James M. Hash; and Stevens Martin Vaughn & Tadych, PLLC, by Michael J. Tadych, for plaintiff-appellant.*

> *Ellis & Winters LLP, by Stephen D. Feldman, James M. Weiss, and Troy D. Shelton, for defendant-appellee.*

JACKSON, Justice.

In this case we must determine whether the Business Court erred by affirming a declaratory ruling issued by the North Carolina Board of Physical Therapy Examiners (Physical Therapy Board) pursuant to N.C.G.S. § 150B-4 determining that dry needling constitutes physical therapy. Because we conclude that the Physical

Therapy Board's decision was consistent with its enabling statutes and administrative rules, we affirm the final judgment of the Business Court that upheld the Physical Therapy Board's declaratory ruling.

In May 2016, the North Carolina Acupuncture Licensing Board (Acupuncture Board) requested a declaratory ruling from the Physical Therapy Board "that 'dry needling' is not within the scope of the Physical Therapy Act," and further requesting that Board to withdraw its "[contradictory] position statement . . . because it is in conflict with the determination of the Rules Review Commission . . . ." Both the Acupuncture Board and the Physical Therapy Board are administrative agencies created by the state legislature, and both are authorized to adopt rules and regulations governing the licensing and performance of their respective occupations. This case arises from a nearly decade-long debate over whether "dry needling" is confined to the practice of acupuncture, thus placing dry needling within the exclusive regulatory purview of the Acupuncture Board. As stated in the record on appeal, the Acupuncture Board defines dry needling as "the insertion of solid filament needles into specific trigger points in a patient's muscle tissue to relieve pain."

The history of the regulation of dry needling is instructive. In 2002 the Physical Therapy Board wrote in its newsletter that dry needling "is a form of acupuncture" and should not be performed by physical therapists who are not also licensed by the Acupuncture Board. Subsequently, in 2010 the Physical Therapy

Board, referencing new scientific studies and practice developments, reconsidered this position and issued an informal position statement concluding that dry needling falls within the practice of physical therapy because it involves "intramuscular manual therapy." The Acupuncture Board disagreed with this conclusion and in 2011 requested an opinion from the Attorney General's office whether dry needling fell within the scope of physical therapy. In lieu of a formal opinion, the Attorney General issued an Advisory Letter taking the position that dry needling is "distinct from acupuncture" and that the Physical Therapy Board must therefore regulate the practice in the interest of public safety. Accordingly, the Physical Therapy Board proposed a formal rule, with an effective date of 1 February 2015, regulating the practice of dry needling by physical therapists. In compliance with N.C.G.S. § 150B-21.8, the Physical Therapy Board submitted the rule to the Rules Review Commission for its consideration. During the public hearing on the proposed rule, several acupuncturists opposed it, and the Commission decided to object to the rule based upon a lack of statutory authority to adopt it. The Physical Therapy Board did not appeal the Commission's decision but instead promptly posted a notice on its website indicating physical therapists could continue to practice dry needling in accordance with existing standards of competence consistent with its 2010 position statement. In 2015 the Acupuncture Board filed an action against the Physical Therapy Board in Superior Court, Wake County seeking to enjoin the practice of dry needling by physical therapists. That action was designated as a mandatory complex business

case and assigned to the Business Court, which dismissed the 2015 complaint based upon the Acupuncture Board's failure to exhaust its administrative remedies before filing the action in superior court.

Thereafter, in order to exhaust its administrative remedies the Acupuncture Board requested the declaratory ruling from the Physical Therapy Board that is at issue in this case. In its 27 June 2016 declaratory ruling, the Physical Therapy Board "reaffirm[ed] the conclusion that dry needling constitutes physical therapy" pursuant to the relevant statutes and Board rules. The Acupuncture Board appealed this ruling, and the Business Court affirmed the Physical Therapy Board's declaratory ruling. The Acupuncture Board then appealed to this Court.

In this appeal the Acupuncture Board argues that dry needling is part of the practice of acupuncture rather than physical therapy. Therefore, it argues, the Physical Therapy Board erred in determining dry needling is within the scope of physical therapy. We disagree.

A decision made in a declaratory ruling by an administrative agency is subject to judicial review. N.C.G.S. §§ 150B-4, -43 to -52 (2017). "On judicial review of an administrative agency's final decision, the substantive nature of each assignment of error dictates the standard of review." *Wetherington v. N.C. Dep't of Pub. Safety*, 368 N.C. 583, 590, 780 S.E.2d 543, 546 (2015) (quoting *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 658, 599 S.E.2d 888, 894 (2004)). In its petition for judicial

review, the Acupuncture Board claimed that the Physical Therapy Board's decision was made in excess of statutory authority, rendered upon unlawful procedure, and affected by other errors of law. Pursuant to N.C.G.S. § 150B-51(c), all three of these types of asserted errors are reviewed de novo. "Under the *de novo* standard of review, the trial court 'consider[s] the matter anew[ ] and freely substitutes its own judgment for the agency's.' " *Wetherington,* 368 N.C. at 590, 780 S.E.2d at 547 (alterations in original) (quoting *Carroll,* 358 N.C. at 660, 599 S.E.2d at 895).

While " '[t]he responsibility for determining the limits of statutory grants of authority to an administrative agency is a judicial function for the courts to perform,' " when "making this determination we apply the enabling legislation practically so that the agency's powers include all those the General Assembly intended the agency to exercise." *High Rock Lake Partners v. N.C. Dep't of Transp.,* 366 N.C. 315, 319, 735 S.E.2d 300, 303 (2012) (internal citations omitted) (quoting *In re Broad & Gales Creek Cmty. Ass'n*, 300 N.C. 267, 280, 266 S.E.2d 645, 654 (1980)). This Court gives "great weight to an agency's interpretation of a statute it is charged with administering; however, 'an agency's interpretation is not binding.' " *Id.* at 319, 735 S.E.2d at 303 ( internal citations omitted) (quoting *Lee v. Gore,* 365 N.C. 227, 229-30, 717 S.E.2d 359, 358 (2011)). "The weight of such [an interpretation] in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *N.C.*

*Sav. & Loan League v. N.C. Credit Union Comm'n*, 302 N.C. 458, 466, 276 S.E.2d 404, 410 (1981) (alteration in original) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 164 (1944)). We will not "follow an administrative interpretation in direct conflict with the clear intent and purpose of the act under consideration." *High Rock Lake Partners*, 366 N.C. at 319, 735 S.E.2d at 303 (quoting *Watson Indus. v. Shaw*, 235 N.C. 203, 211, 69 S.E.2d 505, 511 (1952)). This Court's "primary task in construing a statute is to effectuate the intent of the legislature." *Watkins v. N.C. State Bd. of Dental Exam'rs,* 358 N.C. 190, 207, 593 S.E.2d 764, 774 (2004) (first citing *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 300 N.C. 381, 399, 269 S.E.2d 547, 561 (1980); and then citing *In re Beatty*, 286 N.C. 226, 229, 210 S.E.2d 193, 195 (1974)). We previously have identified the " 'best indicia of . . . legislative purpose' to be 'the language of the statute, the spirit of the act, and what the act seeks to accomplish.' " *Id.* at 207, 593 S.E.2d at 774 (ellipsis in original) (quoting *State ex rel. Comm'r of Ins.*, 300 N.C. at 399, 269 S.E.2d at 561) (citation omitted).

With respect to the scope of physical therapy, the General Assembly has stated:

> "Physical therapy" means the evaluation or treatment of any person by the use of physical, chemical, or other properties of heat, light, water, electricity, sound, massage, or therapeutic exercise, or other rehabilitative procedures, with or without assistive devices, for the purposes of preventing, correcting, or alleviating a physical or mental disability. Physical therapy includes the performance of specialized tests of neuromuscular function, administration of specialized therapeutic procedures, interpretation and implementation of referrals from licensed medical doctors or dentists, and establishment

> and modification of physical therapy programs for patients. *Evaluation and treatment of patients may involve physical measures, methods, or procedures as are found commensurate with physical therapy education and training and generally or specifically authorized by regulations of the Board.* Physical therapy education and training shall include study of the skeletal manifestations of systemic disease. Physical therapy does not include the application of roentgen rays or radioactive materials, surgery, manipulation of the spine unless prescribed by a physician licensed to practice medicine in North Carolina, or medical diagnosis of disease.

N.C.G.S. § 90-270.90(4) (2017) (emphasis added).

Here, as shown by the plain language of the statute, the General Assembly defined the practice of physical therapy broadly and left open the opportunity for the Board to further define physical therapy "generally or specifically . . . by regulations." *Id.* It is clear the intent of the legislature was to allow for the evolution of treatments used in the practice of physical therapy. Specifically, the language in the definition encompasses what is taught in educational programs and training as appropriate for regulation by the Board. This language does not limit the Board's authority to adopt rules to accomplish this purpose.[1] The only prohibitions set forth by the General Assembly are explicit: "Physical therapy does not include the application of roentgen rays or radioactive materials, surgery,[2] manipulation of the spine unless prescribed

---

[1] N.C.G.S. § 150B-2(8a) (2017) defines a "[r]ule" as "any agency regulation, standard, or statement of general applicability that implements or interprets an enactment of the General Assembly . . . ."

[2] The Acupuncture Board attempts to argue that dry needling qualifies as "surgery" based upon a definition promulgated by the North Carolina Medical Society; however, the

by a physician licensed to practice medicine in North Carolina, or medical diagnosis of disease." *Id.* The General Assembly gave the Physical Therapy Board the power to "[a]dopt, amend, or repeal any rules or regulations necessary to carry out the purposes of this Article and the duties and responsibilities of the Board." N.C.G.S. § 90-270.92(9) (2017). The General Assembly specifically expressed that the "powers and duties enumerated [for the Board] are granted for the purpose of enabling the Board to safeguard the public health, safety and welfare against unqualified or incompetent practitioners of physical therapy, and are to be *liberally* construed to accomplish this objective." *Id.* § 90-270.92 (2017). (emphasis added). This language vests the Board with broad authority to regulate the practice of physical therapy and adopt administrative rules and regulations governing the profession. Although not dispositive, the Physical Therapy Board's construction of the statutory term "physical therapy" so as to encompass dry needling is persuasive authority for this Court.

Here the Physical Therapy Board determined that dry needling falls within the statutory definition of physical therapy. Specifically, the Physical Therapy Board concluded that "dry needling is a treatment that uses physical or rehabilitative

---

Medical Society, a voluntary membership association, has no authority to define or regulate surgery. Rather, the Medical Board, which was established pursuant to N.C.G.S. § 90-2, is charged with the authority "to regulate the practice of medicine and surgery for the benefit and protection of the people of North Carolina." For purposes of our review in the instant case, neither the Medical Board nor the Medical Society have asserted that they play a role in governing the practice of physical therapy. Therefore, we are not persuaded by this argument.

procedures, with assistive devices, for the purpose of correcting or alleviating myofascial pain, a physical disability." In determining the weight to give this interpretation, the Court considers: "[1] the thoroughness evident in its consideration, [2] the validity of its reasoning, [3] its consistency with earlier and later pronouncements, and [4] all those factors which give it power to persuade." *N.C. Sav. & Loan League*, 302 N.C. at 466, 276 S.E.2d at 410 (quoting *Skidmore*, 323 U.S. at 140, 65 S. Ct. at 164).

The Physical Therapy Board reached its conclusion in a detailed, forty-nine page declaratory ruling that included references to numerous scientific articles, reports, and books describing the history, efficacy, and safety of dry needling. In making this determination, the Physical Therapy Board looked not only to North Carolina law and experience but also to the conclusions reached by similar administrative agencies in other states. The Physical Therapy Board applied its experience and expertise in construing the enabling statute and rules adopted by the Board to determine that dry needling falls within the statutory definition of physical therapy. Given the Physical Therapy Board's extensive review of a variety of substantial studies and other evidence in conjunction with the involvement of technical and specialized terms specific to physical therapy, we conclude that the Board's reasoning is sound. The Physical Therapy Board's determination also is consistent with its earlier statements, specifically in 2010, that were confirmed in 2011 by the North Carolina Attorney General's staff, and again in 2015 via the

Board's publication clarifying that physical therapists "can continue to perform dry needling so long as they possess the requisite education and training required by N.C.G.S. § 90-270.24(4) [2015]."[3]

The posture of this case is not one we typically see when reviewing a dispute concerning administrative law and an occupational licensing board's interpretation of the statutes governing its profession. Ordinarily, an administrative agency would either promulgate a rule that would undergo notice and comment rulemaking, or the agency could respond to a request for declaratory ruling. Chapter 150B clearly covers both of these scenarios and does not provide that either path is exclusive. Ultimately, both are subject to exhaustion of administrative remedies and to judicial review.

Here, we note that the Physical Therapy Board initially chose to exercise its authority to adopt a rule stating that: "Physical therapy is presumed to include any acts, tests, procedures, modalities, treatments, or interventions that are routinely taught in educational programs or in continuing education programs for physical therapists and are routinely performed in practice settings." 21 NCAC 48C .0101(a) (2018). Part of the Physical Therapy Board's rationale for its declaratory ruling was that relevant literature and other evidence showed that dry needling is being taught in educational and continuing education programs for physical therapists and is

---

[3] Subsection 90-270.24(4), defining "physical therapy," was later recodified as N.C.G.S. § 90-270.90(4) (2017).

routinely performed in practice settings. Specifically, the Physical Therapy Board repeatedly pointed out that eighty-six percent of the knowledge requirements for competency in dry needling are taught in entry-level physical therapy programs, and the additional competencies are obtained through continuing education programs for licensed physical therapists. Because of these findings, the Physical Therapy Board applied its rule stating that "[a] physical therapist who employs . . . procedures . . . in which professional training has been received through education or experience is considered to be engaged in the practice of physical therapy" and concluded that dry needling falls within the practice of physical therapy. *Id.* § .0101(b) (2018). Because the Physical Therapy Board's interpretation of its own rule is consistent with both the statute and the language of the rule, the Board's interpretation "must be given 'controlling weight.'" *Morrell ex rel. Long v. Flaherty*, 338 N.C. 230, 238, 449 S.E.2d 175, 180 (1994) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S. Ct. 2381, 2386 (1994)), *cert. denied*, 515 U.S. 1122, 115 S. Ct. 2278 (1995)).

The Acupuncture Board also argues that the Physical Therapy Board has inappropriately used a policy statement to usurp the authority of the Rules Review Commission, which objected to a proposed rule by the Physical Therapy Board regarding training requirements for the practice of dry needling. However, the Rules Review Commission's authority over a proposed rule is generally limited to deciding whether to approve or object to the rule. *See* N.C.G.S. § 150B-21.10 (2017). In doing so, the Rules Review Commission does not consider questions relating to the quality

or efficacy of the proposed rule but rather determines whether a rule meets four criteria:

> (1) It is within the authority delegated to the agency by the General Assembly.
> (2) It is clear and unambiguous.
> (3) It is reasonably necessary to implement or interpret an enactment of the General Assembly, or of Congress, or a regulation of a federal agency. The Commission shall consider the cumulative effect of all rules adopted by the agency related to the specific purpose for which the rule is proposed.
> (4) It was adopted in accordance with Part 2 of this Article.

*Id.* § 150B-21.9(a) (2017). As this Court previously has opined, "[t]he Commission is tasked only with the responsibility to review [a] Board's rules from a procedural perspective for clarity and to ensure that the rules are adopted in compliance with the APA. Such a review does not require special expertise . . . ." *N.C. State Bd. of Educ. v. State*, __ N.C. __, __, 814 S.E.2d 54, 65 (2018). "[I]f an agency such as [a] Board desires to challenge the Commission's exercise of its delineated duties, '[w]hen the Commission returns a permanent rule to an agency . . . the agency may file an action for declaratory judgment in Wake County Superior Court.' " *Id.* at __, 814 S.E.2d at 65 (third and fourth alterations in original) (quoting N.C.G.S. § 150B-21.8(d) (2017)). The Commission's rejection of the Physical Therapy Board's proposed rule on required training for the use of dry needling in no way conflicts with or affects the Physical Therapy Board's policy statements interpreting the definition of physical therapy. Both the 2002 and the 2010 policy statements by the Physical Therapy Board regarding dry needling are "[n]onbinding interpretative statements within the

delegated authority of an agency that merely define, interpret, or explain the meaning of a statute or rule." N.C.G.S. § 150B-2(8a)(c) (2017). As such, they are necessarily not "statement[s] of general applicability" that would require formal rulemaking. *Id.* § 150B-2(8a), *see id.* § 150B-18 (2017). Therefore, this change in policy is not forbidden by the Rules Review Commission's subsequent rejection of a rule on a related subject.

Additionally, the Acupuncture Board contends that because of the Physical Therapy Board's 2002 policy statement excluding dry needling from the practice of physical therapy, the 2010 policy statement expanded the scope of the practice of physical therapy in contravention of the Administrative Procedure Act. *See id.* § 150B-19(2) (2017) ("An agency may not adopt a rule that . . . [e]nlarges the scope of a profession, occupation, or field of endeavor for which an occupational license is required.") This argument misapprehends that provision of the Administrative Procedure Act. *Id.* This subsection prevents an agency from expanding the activities that require a license beyond those identified by the legislature, but the provision does not relate to how an agency regulates those it licenses. The Physical Therapy Board's 2010 policy statement does not expand the class of persons required to be licensed, but simply indicates that when licensed physical therapists engage in dry needling, they must comply with the relevant general rules promulgated by the Physical Therapy Board.

Finally, the Acupuncture Board also argues that dry needling cannot be part of the practice of physical therapy because it is acupuncture. We first note that although the Physical Therapy Board's observation that dry needling does not employ acupuncture methods of diagnosis and treatment is persuasive, the Physical Therapy Board lacks authority or expertise to determine whether a particular practice falls within the scope of acupuncture. This is because the law prohibiting the unauthorized practice of acupuncture, like many laws governing the practice of various occupations and professions, must be strictly construed. *See Elliott v. N.C. Psychology Bd.*, 348 N.C. 230, 235, 498 S.E.2d 616, 619 (1998) ("Thus, the Psychology Practice Act should be strictly construed because it is both in derogation of the common law and penal in nature."). "Strict construction of statutes requires only that their application be limited to their express terms . . . ." *Turlington v. McLeod*, 323 N.C. 591, 594, 374 S.E.2d 394, 397 (1988) (citing *Harrison v. Guilford County,* 218 N.C. 718, 12 S.E.2d 269 (1940)). As this Court has already affirmed, when there is ambiguity in the statutory language defining the role of an agency concurrent authority is assumed. *See Trayford v. N.C. Psychology Bd.,* 360 N.C. 396, 627 S.E.2d 462 (2006), *aff'g per curiam* 174 N.C. App 188, 619 S.E.2d 862 (2005) (holding that the Psychology Board could not regulate an individual's professional counselor license, regulated by the North Carolina Board of Licensed Professional Counselors, solely based on the fact he was also licensed as a psychological associate and that the

Psychology Practice Act, N.C.G.S. § 90-270.4(g) provided for licensees to "comply with all conditions, requirements, and obligations imposed by [the Board or Act]").

The Acupuncture Board attempts to distinguish this case from *Trayford*. It argues that the Physical Therapy Act explicitly mandates that the Physical Therapy Board cannot limit the activities of other licensed professionals. *See* N.C.G.S. § 90-270.34(b)(1) (2015)[4] ("Nothing in this Article shall be construed to prohibit . . . [a]ny act in the lawful practice of a profession by a person duly licensed in this State . . . .") The Acupuncture Board argues that the Acupuncture Act contains no similar provision, *see id.* § 90-452 (2017); however, these provisions provide a limitation on enforcement actions by the covered boards, not a limitation on their areas of authority. This Court does not determine the outcome of hypothetical enforcement actions, and "[i]t is no part of the function of the courts to issue advisory opinions." *Wise v. Harrington Grove Cmty Ass'n,* 357 N.C. 396, 408, 584 S.E.2d 731, 740 (2003) (citing *City of Greensboro v. Wall*, 247 N.C. 516, 519, 101 S.E.2d 413, 416 (1958)).

Both the Physical Therapy Board's declaratory ruling and underlying policy statement are consistent with the statutes and administrative rules that the Board is charged with interpreting and administering. Therefore, we defer to the Physical Therapy Board's interpretations of those same statutes and rules in reaching the

---

[4] This provision was recodified as N.C.G.S. § 90-270.101(b)(1) (2017); the quoted language is the same in both statutes.

conclusion that dry needling is a part of the practice of physical therapy. Accordingly, we affirm the decision of the Business Court affirming the Physical Therapy Board's declaratory ruling reaffirming that dry needling falls within the scope of physical therapy in North Carolina.

AFFIRMED.