IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-94

Filed: 31 December 2020

Wake County, No. 19 CVS 4185

FUND HOLDER REPORTS, LLC, Petitioner

v.

NORTH CAROLINA DEPARTMENT OF STATE TREASURER, Respondent

Appeal by Petitioner from Order entered 26 November 2019 by Judge Vinston Rozier in Wake County Superior Court. Heard in the Court of Appeals 26 August 2020.

*Stam Law Firm, PLLC, by R. Daniel Gibson, for petitioner.*

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Marc X. Sneed, for respondent.*

HAMPSON, Judge.

**Factual and Procedural Background**

Fund Holder Reports, LLC (FHR) appeals from an Order of the Wake County Superior Court affirming a Declaratory Ruling by the North Carolina Department of State Treasurer (the Department) interpreting N.C. Gen. Stat. § 116B-78(d) and its application to FHR's business practices. The Record before us reflects the following:

FHR is a multi-state company that assists its clients in locating and processing escheated fund claims. FHR began assisting North Carolina residents in collecting their escheated funds in 2015. FHR typically enters into a written agreement with a client stating FHR will advance the expenses related to finding and collecting the escheated funds and will receive a percentage of the escheated funds as a finder's fee. FHR, as part of the agreement, also obtains a power of attorney to collect the funds and "to perform all acts necessary to protect and recover [the funds]." Once FHR has located and negotiated recovery of the escheated funds on a client's behalf, the State sends FHR a check payable to the client in the "care of" FHR. FHR endorses the check for deposit only and deposits the check into its client trust account. Then, FHR sends its client a check from the client trust account for the value of the escheated funds minus FHR's finder's fee. FHR then transfers the value of the finder's fee into its operating account after the client deposits the check from FHR.

The Department is the North Carolina state agency responsible for administering the Unclaimed Property Act as codified in Chapter 116B of the North Carolina General Statutes. On 24 October 2018, FHR received a letter from the Department notifying FHR it was in violation of N.C. Gen. Stat. § 116B-78(d). Specifically, the letter stated the Department's Unclaimed Property Division learned FHR was "endorsing and depositing checks from the Division made payable to claimants" and that the Department would "cease processing any pending or

submitted claims from [FHR] until it receives assurances that [FHR] is no longer in violation of [Section 116B-78(d)]."

Section 116B-78(d) states:

> Any person who enters into an agreement covered by this section with an owner shall be allowed to receive cash property, but not tangible property or securities, on behalf of the owner but shall not be authorized to negotiate the check made payable to the owner. Tangible property shall be delivered to the owner by the Treasurer, and securities will be registered into the owner's name.

N.C. Gen. Stat. § 116B-78(d) (2019). On 7 December 2018, FHR's counsel sent the Department a response to its 24 October letter requesting the Department issue a Declaratory Ruling pursuant to N.C. Gen. Stat. § 150B-4[1] as to whether: (1) FHR, with a valid power of attorney, may deposit a check made payable to the owner; (2) the Department is authorized to issue a check payable to the owner and a separate check payable to FHR for its finder's fee; and (3) the Department interpreted Section 116B-78 to permit FHR to receive cash but not negotiate a check. On 22 February 2019, the Department issued its Declaratory Ruling concluding: (1) FHR may not deposit a check made payable to the owner using a valid power of attorney; (2) the Department may only issue checks to the legal owner and may not issue separate

---

[1] "On request of a person aggrieved, an agency shall issue a declaratory ruling as to the validity of a rule or as to the applicability to a given state of facts of a statute administered by the agency or of a rule or order of the agency." N.C. Gen. Stat. § 150B-4(a).

checks to FHR for its finder's fee; and (3) under Section 116B-78(d), FHR may receive cash property in the form of checks, but may not negotiate those checks.

On 29 March 2019, FHR filed a Petition for Judicial Review of the Department's Declaratory Ruling in Wake County Superior Court.[2] Before the Superior Court, FHR argued the Department's Ruling misinterpreted and misapplied North Carolina law by: (1) reading Section 116B-78(d) as superseding the North Carolina Power of Attorney Act; (2) reading Section 116B-78(d) as preventing FHR from negotiating or depositing checks made payable to its clients when it had a valid power of attorney; and (3) reading Section 116B-78(d) as preventing the Department from issuing separate checks to FHR.

On 26 November 2019, the Wake County Superior Court entered an Order affirming the Department's Declaratory Ruling. In its Order, the Superior Court first determined the applicable standard of review of the Department's Declaratory Ruling under N.C. Gen. Stat. § 150B-51(c) was de novo. Applying this de novo standard of review, the Superior Court concluded the "plain language," of Section 116B-78(d): (1) allows a property finder to receive cash property, but not to negotiate a check even if the property finder possesses a valid power of attorney; (2) does not allow the issuance of a separate payment to a property finder for its finder's fee; and (3) the Department,

---

[2] N.C. Gen. Stat. § 150B-4(a1)(3) (2019) provides: "A declaratory ruling is subject to judicial review in accordance with Article 4 of this Chapter." Article 4 of Chapter 150B provides authorization and procedures for seeking judicial review of final administrative decisions in contested cases. N.C. Gen. Stat. § 150B-43, *et seq.* (2019).

thus, did not err in its Declaratory Ruling. FHR filed a written Notice of Appeal from the Superior Court's Order on 23 December 2019.

## Issue

The dispositive issue on appeal is whether the Superior Court properly affirmed the Department's conclusion that Section 116B-78(d) does not permit FHR, even with a valid power of attorney, to endorse and deposit checks made payable to an owner in its client trust accounts.[3]

## Standard of Review

Under North Carolina's Administrative Procedure Act the role of a superior court reviewing a final agency decision is as follows:

> The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners *may* have been prejudiced because the findings, inferences, conclusions, or decisions are:
>     (1) In violation of constitutional provisions;
>     (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
>     (3) Made upon unlawful procedure;
>     (4) Affected by other error of law;
>     (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>     (6) Arbitrary, capricious, or an abuse of discretion.

---

[3] FHR also argues the Superior Court erred by employing "an initial determination as to whether [FHR] has been prejudiced by the [the Department's] ruling" and in concluding FHR was not prejudiced by the Declaratory Ruling. Because, however, the Superior Court did not end its analysis there and addressed the merits of FHR's arguments on judicial review and based on our disposition of this case on these merits, we do not reach the question of whether the Superior Court erred in its analysis of whether FHR suffered any prejudice from the Department's ruling.

N.C. Gen. Stat. § 150B-51(b) (2019) (emphasis added).

"A party to a review proceeding in a superior court may appeal to the appellate division from the final judgment of the superior court as provided in G.S. 7A-27." N.C. Gen. Stat. § 150B-52 (2019). Our scope of review under § 150B-52 is "the same as it is for other civil cases." *Id.* When this Court reviews an order from a superior court examining a final agency decision, we examine the order for errors of law. *Shackleford-Moten v. Lenoir Cnty. Dep't of Soc. Servs.*, 155 N.C. App. 568, 572, 573 S.E.2d 767, 770 (2002) (citations omitted). This process is a "twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Holly Ridge Assocs., LLC v. N.C. Dep't of Env't & Nat. Res.*, 361 N.C. 531, 535, 648 S.E.2d 830, 834 (2007) (citation and quotation marks omitted).

Thus, as an initial matter, when a superior court reviews a final agency decision, the standard of review "depends upon the particular issues presented on appeal." *ACT-UP Triangle v. Comm'n for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (citation and quotation marks omitted). Questions of law receive de novo review. N.C. Gen. Stat. § 150B-51(c) (2019); *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 659, 599 S.E.2d 888, 894 (2004) (citation and quotation marks omitted). Here, FHR petitioned the Superior

Court to review the Department's Declaratory Ruling arguing the Declaratory Ruling "misinterpret[ed] and misappl[ied]" North Carolina law. As FHR raised questions of law, the Superior Court accordingly correctly applied a de novo standard of review. *Id.*

FHR contends, however, the Superior Court erred in its de novo review by affirming the Department's interpretation that N.C. Gen. Stat. § 116B-78(d)'s prohibition on property finders negotiating checks bars FHR from depositing its clients' checks. Although the Superior Court did not expressly conclude Section 116B-78(d) prohibited FHR from depositing checks, it did conclude the law prevented FHR from negotiating checks and affirmed the Department's Declaratory Ruling, which itself concluded FHR could not deposit its clients' checks.

We review an agency's alleged error of law de novo. *Carroll*, 358 N.C. at 666, 599 S.E.2d at 898. Our courts give "great weight to an agency's interpretation of a statute it is charged with administering; however, an agency's interpretation is not binding." *N.C. Acupuncture Licensing Bd. v. N.C. Bd. of Physical Therapy Exam'rs*, 371 N.C. 697, 700, 821 S.E.2d 376, 379 (2018) (citation and quotation marks omitted); *see also Carpenter v. N.C. Dep't of Human Res.*, 107 N.C. App. 278, 279, 419 S.E.2d 582, 584 (1992) ("the court should defer to the agency's interpretation of the statute . . . as long as the

agency's interpretation is reasonable and based on a permissible construction of the statute."). Our "primary task in construing a statute is to effectuate the intent of the legislature" and the "best indicia of . . . legislative purpose [is] the language of the statute[.]" *N.C. Acupuncture Licensing Bd.*, 371 N.C. at 701, 821 S.E.2d at 380 (citations and quotation marks omitted).

## Analysis

N.C. Gen. Stat. § 116B-78 is a statute of limited application. It governs contracts to locate unclaimed property within the scope of Chapter 116B. Specifically, it only governs an agreement "if its primary purpose is to locate, deliver, recover, or assist in the recovery of property that is distributable to the owner or presumed abandoned." N.C. Gen. Stat. § 116B-78(a1) (2019).

It is in this specific context the Department issued its Declaratory Ruling responding to a very general question posed by FHR. FHR asked whether the Department believed FHR, as a property finder[4], "may (as the owners' power of attorney) deposit a check [made] payable to a property owner." In response, the Department issued a very general ruling, expressly noting: "the Department's response is not to be construed as anything other than a general ruling." The

---

[4] We adopt the this use of the term "property finder" by the parties and refer to "property finder" to denote a person or entity that enters into an agreement with a property owner when the agreement's "primary purpose is to locate, deliver, recover, or assist in the recovery of property that is distributable to the owner or presumed abandoned" under the Unclaimed Property Act. In this context, FHR is a property finder.

Department responded, given Section 116B-78(d)'s prohibition on property finders negotiating checks: "as a property finder, if FHR possesses a valid power of attorney to act on behalf of an owner, it would nevertheless be unable to deposit a check that is payable to the owner."

Thus, the Declaratory Ruling simply determined FHR, where it was acting in its capacity as a property finder governed by Section 116B-78(d), was not authorized to deposit checks made out to its clients by the Department, even with a purported power of attorney. Notably, as the Department pointed out, it was not provided with any power of attorney to review. The Department's ruling is clearly limited only to persons or entities acting as property finders under an agreement governed by Section 116B-78(d). The Department's ruling does not address instances where a person or entity with power of attorney is acting other than as a property finder—for example a family member holding a general power of attorney, a guardian, or even a more general attorney-client relationship. Moreover, the ruling does not address instances in which the Department might issue payment to an owner other than by check—for instance, electronic funds transfer, although it does acknowledge Section 116B-78(d) does permit a property finder "to receive cash property."

Having received this general Declaratory Ruling, upon judicial review and appeal to this Court, FHR makes a more nuanced argument. FHR contends the Department's ruling was erroneous because Section 116B-78(d)'s prohibition on

property finders negotiating client checks should not bar *all* deposits by a property finder. FHR submits that because its agreements with its clients contain a clause purportedly granting FHR power of attorney and FHR, on behalf of its clients, endorses and deposits client checks into a trust account for its clients, these deposits do not constitute a negotiation.

Here, as both the Department and Superior Court recognized, the plain language of Section 116B-78(d) clearly provides a property finder is not authorized to negotiate a check payable to its client (the property owner):

> Any person who enters into an agreement covered by this section with an owner shall be allowed to receive cash property, but not tangible property or securities, on behalf of the owner but shall not be authorized to negotiate the check made payable to the owner. Tangible property shall be delivered to the owner by the Treasurer, and securities will be registered into the owner's name.

N.C. Gen. Stat. § 116B-78(d) (2019). FHR, however, contends the Department interpreted the term "negotiate" too broadly to include any deposit by a property finder of a check made payable to an owner. We disagree and conclude the Department's interpretation of the statute is reasonable in light of the statute's language and purpose.

"Negotiation" is not a defined term under Chapter 116B. Rather, as FHR notes, North Carolina's Uniform Commercial Code (UCC) defines "negotiation" as "a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby

becomes its holder." N.C. Gen. Stat. § 25-3-201(a) (2019).[5] A "holder" is defined under the UCC as the "person in possession of a negotiable instrument that is payable to . . . an identified person that is the person in possession[.]" N.C. Gen. Stat. § 25-1-201(21) (2019).

Here, the Department issues a check to the property owner in care of FHR. *See* N.C. Gen. Stat. § 25-3-105(c) (2019) ("Issuer" means a "maker or drawer of an instrument"). FHR, as an agent of the owner, endorses client checks payable specifically to its bank and deposits the checks in its trust account. *See Summerlin v. Nat'l Serv. Indus., Inc.*, 72 N.C. App. 476, 478, 325 S.E.2d 12, 14 (1985). In so doing, FHR transfers possession of the checks to FHR's depositary bank by endorsing and depositing the checks. Again, applying the UCC, under N.C. Gen. Stat. § 25-4-205: "The depositary bank becomes a holder of the item at the time it receives the item for collection if the customer at the time of delivery was a holder of the item, whether or not the customer indorses the item[.]" N.C. Gen. Stat. § 25-4-205 (2019). Therefore, by these plain terms, the Department's interpretation of Section 116B-78(d)—

---

[5] Black's Law Dictionary likewise defines "negotiate," in relevant part, "to transfer (an instrument) by delivery or endorsement . . . for value, in good faith, without notice of conflicting title claims . . . ." *Negotiate, Black's Law Dictionary* (11th ed. 2019).

that FHR's deposits of its client's checks are unauthorized negotiations—is reasonable and consistent with the plain language of the statute.[6]

For its part, FHR nevertheless contends because its agreements with the property owners require the property owner to provide FHR power of attorney, FHR is the "legal representative" of its clients and, thus, tantamount to being a property owner. *See* N.C. Gen. Stat. § 116B-52(9) (2019) (" 'Owner' means a person who has a legal or equitable interest in property subject to this Chapter or the person's legal representative."). This contention ignores the fact that—at least on the Record before us—any purported power of attorney between FHR and its clients is a term of the agreement which is expressly governed by N.C. Gen. Stat. § 116B-78. *See* N.C. Gen. Stat. § 116B-78(a1)

---

[6] FHR argues banks do not always become "holders in due course" under the UCC citing N.C. Gen. Stat. §§ 25-4-208 and 209. Thus, FHR contends because not every deposit makes a bank a holder in due course, the bank may not become a holder, and, thus, no negotiation occurs. FHR's argument overlooks the fact under the UCC the terms "holder" and "holder in due course" are not synonymous. N.C. Gen. Stat. § 25-3-302 (2019) provides:

> "holder in due course" means the holder of an instrument if:
> (1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
> (2) The holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in G.S. 25-3-306, and (vi) without notice that any party has a defense or claim in recoupment described in G.S. 25-3-305(a).

N.C. Gen. Stat. § 25-3-302 (2019).

(2019) ("An agreement by an owner is covered by this section if its primary purpose is to locate, deliver, recover, or assist in the recovery of property that is distributable to the owner or presumed abandoned.").

Moreover, as the Department recognized, North Carolina's Uniform Power of Attorney Act, found in Chapter 32C of the General Statutes, "does not supersede any other law applicable to financial institutions or other entities, and the other law controls if inconsistent with the provisions of this Chapter." N.C. Gen. Stat. § 32C-1-122 (2019). Thus, in interpreting Section 116B-78(d), the Department determined the plain language of the statute meant that even if a property finder possesses a valid power of attorney, it cannot, while acting as a property finder governed by N.C. Gen. Stat. § 116B-78(d), under its agreement with its client negotiate a check payable to the client. This interpretation is entirely reasonable. Indeed, under FHR's position, allowing a property finder to rely on a purported power of attorney in an agreement governed by Section 116B-78 for the purpose of circumventing the express prohibition on property finders negotiating their clients' checks would appear to run directly contrary of the plain language of subsection 116B-78(d) as intended by the General Assembly.

The Department's interpretation of Section 116B-78 is further consistent with the purpose of the statute as demonstrated in its legislative

history. The statute was enacted as part of the Unclaimed Property Act in 1999. An Act to Enact the North Carolina Unclaimed Property Act, 1999 N.C. Sess. Laws 1904, 1923-24. In 2009, the General Assembly made sweeping amendments to the statute's language including enacting Section 116B-78(d); the law stands today as amended in 2009. An Act to Protect Property Owners of Abandoned Property by Regulating Property Finders, 2009 N.C. Sess. Laws 509, 510-11. These 2009 amendments demonstrate a clear legislative intent to protect property owners. These provisions added specific criteria for such agreements between property finders and owners, including express limits on the amount of compensation a finder could receive. *Id.* The General Assembly also added a subsection providing any violation of Section 116B-78 "constitutes an unfair or deceptive trade practice under G.S. 75-1.1." *Id.* These changes, coupled with the 2009 Act's title, clearly evince the General Assembly's intent to protect property owners and regulate property finders—by strictly defining the methods for compensation and limiting exactly what a property finder could do with property.

Whether or not the blanket prohibition in Section 116B-78 on property finders negotiating checks does or does not constitute good policy or has a chilling effect on an otherwise sound business model is a question for the General Assembly, and we are not free to ignore its plain language. *Orange*

*County ex rel. Byrd v. Byrd¸* 129 N.C. App. 818, 822, 501 S.E.2d 109, 112 ("[W]e are not free to either ignore or amend legislative enactments because when the language of a statute is clear and unambiguous, the courts must give it its plain meaning." (citing *State ex rel. Utilities Commission v. Edmisten*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1977))). FHR's recourse is with the General Assembly as "the judiciary should avoid ingrafting upon a law something that has been omitted, which it believes ought to have been embraced." *Shaw v. U.S. Airways, Inc.*, 362 N.C. 457, 463, 665 S.E.2d 449, 453 (2008) (alterations, citations, and quotation marks omitted).

Thus, the Department's Declaratory Ruling interpreting Section 116B-78(d) as precluding FHR from negotiating checks payable to its clients by depositing those checks in FHR's client trust accounts, even with a valid power of attorney, is reasonable and consistent with the plain language and purpose of the statute. Therefore, the Department did not err in its Declaratory Ruling. Consequently, in turn, the Superior Court did not err in affirming the Department's Declaratory Ruling.

## **Conclusion**

Accordingly, we affirm the Superior Court's Order affirming the Department's Declaratory Ruling.

AFFIRMED.

Judge BROOK concurs.

Judge TYSON dissents in a separate opinion.


No. COA20-94 – *Fund Holder Reps., LLC v. N.C. Dep't of State Treasurer*


TYSON, Judge, dissenting.

The specific issue before this Court on appeal from the superior court and State Treasurer is whether a principal's legal representative's sole act of receiving a check, issued to the principal, and depositing that check into a trust account for the benefit of the principal is a "deposit" or a "negotiation" of that check. The superior court's order is properly reversed and remanded. I respectfully dissent.

The Treasurer asserted FHR was "endorsing and depositing checks from the Division made payable to claimants." The Treasurer threatened to "cease processing any pending or submitted claims from [FHR] until it receives written assurances that [FHR] is no longer in violation of [N.C. Gen. Stat. § 116B-78(d)]."

N.C. Gen. Stat. § 116B-78(d) states:

> Any person who enters into an agreement covered by this section with an owner shall be allowed to receive cash property, but not tangible property or securities, on behalf of the owner but shall not be authorized to negotiate the check made payable to the owner. Tangible property shall be delivered to the owner by the Treasurer, and securities will be registered into the owner's name.

- 16 -

N.C. Gen. Stat. § 116B-78(d) (2019).

N.C. Gen. Stat. § 116B's definition of "owner" includes "the [owner's] legal representative." N.C. Gen. Stat. § 116B-52(9) (2019). After FHR locates the principal's funds held by the Treasurer in the unclaimed property fund and provides the required proof of principal's ownership, the State issues a check payable to the principal and delivers the check in the "care of" FHR.

The common law of agency has recognized for centuries "the acts of an agent are the acts of the principal." *Young & McQueen Grading Co. v. Mar-Comm & Assocs.*, 221 N.C. App. 178, 183, 728 S.E.2d 1, 4 (2012) (citation omitted). "Payment by an agent is payment by the principal" and payment to an agent is payment to the principal. JOSEPH STORY, COMMENTARIES ON THE LAW OF AGENCY 528 (8th ed. 1874). Under the North Carolina power of attorney statute ("UPA"), unless otherwise restricted, the agent's act is the act of its principal. N.C. Gen. Stat § 32C-1-114 (2019).

These funds at issue are not State funds. The escheated funds belong to and remain the property of the principal. The Treasurer is merely holding these funds until the true owner is identified and provides proof to support its claims for delivery. Once the Treasurer complies with the statute to identify and deliver the unclaimed funds to the owner or the owner's legal representative, it has no further role or oversight in the principal's subsequent disposition of its funds. If the principal directs its agent to bet the funds on a gamble or to purchase an exotic automobile for the

principal, it is the principal's money and their sole prerogative on when, where, how, and to whom they are spent. N.C. Gen. Stat. § 32C-1-114(a).

As the principal's legal representative, unless otherwise limited or restricted, the agent is empowered to act in the stead of, as and for, the principal, subject to the fiduciary duties of, among others, loyalty, honesty, to avoid self-dealing, and to account for all its actions on behalf of the principal. N.C. Gen. Stat. § 32C-1-114(b).

## I. Interpretation

FHR argues the superior court erred in its *de novo* review by affirming the Treasurer's interpretation asserting N.C. Gen. Stat. § 116B-78(d)'s prohibition on property finders-agents negotiating checks and also bars FHR from depositing its principal's checks. The Treasurer also asserted even if FHR possesses a valid power of attorney to act on behalf of an owner, it would nevertheless be unable to deposit a check that is payable to the owner.

As correctly noted by the majority's opinion, the superior court did not expressly conclude the statutory language in Section 116B-78(d) prohibits FHR from "depositing" checks issued and payable to the principal. *See* N.C. Gen. Stat. § 116B-78(d) ("but shall not be authorized to negotiate the check made payable to the owner").

Deposit is defined as "the act of placing money in a bank for safety and convenience." *Deposit*, BLACK'S LAW DICTIONARY (11th ed. 2019). As previously noted,

the statutory definition of an "owner" includes, "the [owner's] legal representative." N.C. Gen. Stat. § 116B-52(9).

N.C. Gen. Stat. § 116B does not define either "deposit" or "negotiate." "Negotiate" is defined as "to transfer (an instrument) by delivery or [e]ndorsement." *Negotiate*, BLACK'S LAW DICTIONARY (11th ed. 2019). Under N.C. Gen. Stat. § 25-3-201 (2019), the Uniform Commercial Code defines "negotiation" as "a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." The UCC itself is confusing on this issue as a depository bank is merely "a collecting agent" for the principal's check on one hand and, on the other hand, the bank becomes a "holder" upon receiving the instrument for collection. N.C. Gen. Stat. §§ 25-4-208, 25-1-201(21) (2019). In either event, the depository bank acts as the agent of the principal, who is the owner of the funds.

## II. The UPA and Common Law Agency

Under the UPA, FHR, as agent and the holder of a valid power of attorney, possesses the broad authority and powers of the principal. Agents may claim, receive, obtain, and disburse money of which the principal is entitled. N.C. Gen. Stat § 32C-2-203 (2019). Agents, under the UPA, can also demand or obtain money the principal is due through an estate or trust. *See* N.C. Gen. Stat. § 32C-1-114(b) (2019). Estates

and trust or escrow accounts are common sources of escheated funds. *See* N.C. Gen. Stat. §§ 116B-2.2, 116B-3 (2019).

Once the agent has received the principal's funds, the agent can deposit, use, disburse, or invest those funds on behalf of the principal, as is consistent with the principal's instructions. Unless a power of attorney expressly provides otherwise, the agent may lawfully exercise these broad powers to act on behalf of its principal. Basically, the agent can perform any act the principal can lawfully perform for itself. *Young & McQueen Grading Co.,* 221 N.C. App. at 183, 728 S.E.2d at 4 (citation omitted).

The principal hires FHR for the express purpose of locating and receiving their funds, held by the Treasurer on their behalf, and then to deliver these funds. It is undisputed the common law of agency, the UPA, and N.C. Gen. Stat. § 116B empower FHR to do this on behalf of its principal.

The Treasurer reads UPA exclusion provisions applicable to banks and financial institutions to purportedly exempt N.C. Gen. Stat. § 116B-78(d) from the general applicability of the UPA or the common law of agency. The UPA "does not supersede" other laws applicable to "financial institutions or other entities." N.C. Gen. Stat. § 32C-1-122 (2019). As correctly noted in the majority's opinion, this overly broad interpretation of the statute is untenable.

The official comments to this section of the UPA "addresses concerns" from banking and insurance industries governing banking and insurance regulations which may conflict with the UPA. *See* N.C. Gen. Stat. § 32C-1-122.

> The primary rule of construction . . . is to ascertain the intent of the legislature and to carry out such intention to the fullest extent. To effectuate that intent, statutes dealing with the same subject matter must be construed *in pari materia* and harmonized, if possible, to give effect to each. It is a fundamental rule of statutory construction that sections and acts *in pari materia,* and all parts thereof, should be construed together and compared with each other. Words and phrases of a statute are to be construed as a part of the composite whole and accorded only that meaning which other modifying provisions and the clear intent and purpose of the statute permits.

*In re Hayes*, 199 N.C. App. 69, 78-79, 681 S.E.2d 395, 401 (2009) (alterations omitted) (citations and internal quotation marks omitted). When harmonized, N.C. Gen. Stat. § 116B, the UCC, and the UPA authorizes FHR, as the owner's representative and under a valid power of attorney, to receive and deposit checks on behalf of its principal, but not "negotiate" these checks.

If the Court reads these two statutes to be in conflict, this interpretation unnecessarily abrogates the common law and the UPA. As noted, in the common law of agency, "payment by an agent is payment by the principal" and payment to an agent is payment to the principal. JOSEPH STORY, COMMENTARIES ON THE LAW OF AGENCY 528 (8th ed. 1874).

Unless a statute specifically abrogates the common law, the common law continues in full force and effect. N.C. Gen. Stat. § 4-1 (2019). It must "affirmatively appear[]"a statute abrogates the common law. *Price v. Edwards*, 178 N.C. 493, 500, 101 S.E. 33, 37 (1919).

N.C. Gen. Stat. § 116B does not clearly abrogate the common law nor the UPA or UCC. *In re Hayes*, 199 N.C. App. at 78-79, 681 S.E.2d at 401 ("It is a fundamental rule of statutory construction that sections and acts *in pari materia*, and all parts thereof, should be construed together and compared with each other").

### IV. N.C. Gen. Stat. § 116B

To read N.C. Gen. Stat. § 116B to preclude FHR, or any other similar agent, from depositing the check it receives from the Treasurer issued to its principal would write words into and broaden the meaning of the statute, which the General Assembly did not enact. The statute only precludes FHR from negotiating the checks, not receiving and depositing the cash funds or a cash equivalent check it is enabled to lawfully acquire under the statute, as an "[owners'] legal representative," and an agent of the principal under common law and the UPA. N.C. Gen. Stat. § 116B-52(d).

N.C. Gen. Stat. § 116B expressly allows and does not restrict a property finder-agent like FHR from receiving and depositing, but not to negotiate a check, made payable to its principal. Those two are separate functions, as their definitions clearly indicate. After admittedly lawful receipt by FHR from the Treasurer, there is no

change in possession since the funds are always held by the principals' agents in trust for its use and benefit and are disbursed according to the principal's express instructions. "The acts of an agent are the acts of the principal." *Young & McQueen Grading Co.,* 221 N.C. App. at 183, 728 S.E.2d at 4 (citation omitted).

In other words, FHR may lawfully receive and deposit a check into a trust account for the benefit of its principal, but it may not negotiate the check to anyone other than the principal or for its benefit, its account, or to another of the principal's agents.

A natural reading of the statute suggests FHR, or any agent of the principal may receive checks directly from the Treasurer and then deposit these checks as instructed by its principal as any other agent is empowered to do, *e.g.* parents*,* employees*,* attorneys, securities or real estate brokers, accountants, administrators, guardians, trustees, or executors. If FHR does not negotiate or convert the checks to its own use or transfer to an unauthorized third party, it has merely deposited the check for the principal's benefit and has not violated the statute.

If FHR is "the owner" of escheated funds as is defined in the statute, via their being a legal representative of the principal, FHR has the power, as attorney in fact, to deposit escheated funds. This power continues so long as FHR is acting within the scope of its agency. Distinguishing depositing from negotiating allows the remainder

of N.C. Gen. Stat. § 116B to function and harmonizes the statute with common law principles of agency, the UPA, and the UCC.

The Treasurer argues FHR merely depositing a check requires an "[e]ndorsement" by the depositor, which then makes the deposit a "negotiation," is wholly subsumed by N.C. Gen. Stat. § 116B itself. As the "owner," which definition includes the owner's legal representative, FHR's act of "depositing" the check is not a negotiation, because the deposit does not transfer ownership of the funds. The funds were received as and remain the property of the principal, held in a trust account for the benefit of the principal and eventually disbursed per its instructions.

FHR does not "endorse" the check, separate from being an act of the principal, to deposit nor incur endorser's liability. *See Young & McQueen Grading Co.,* 221 N.C. App. at 183, 728 S.E.2d at 4 (citation and quotation marks omitted).

Only after the principal has received and cashed the trust account check for the balance due does the agent receive their agreed-upon compensation.

## V. Conclusion

A principal's authority to appoint FHR as its agent to find and recover escheated funds on their behalf is evidenced not only by the principal hiring FHR, but also providing FHR with valid power of attorney.

Depositing the principal's check by FHR is not a negotiation, either by definition or under the statute, because FHR is the owner's legal representative in

the transaction and ownership of the funds remains with the principal or its agents. This situation is entirely contemplated by the General Assembly's enactment of N.C. Gen. Stat. § 116B, as is evidenced by the definitions in the statute.

Common law agency principals, the UPA, UCC, and N.C. Gen. Stat. § 116B can be harmonized to recognize FHR's authority, as agent to deposit the principal's formerly escheated funds, and to prevent FHR from negotiating the check for other than the principal's benefit or account. If FHR were "endorsing" the check and keeping the funds for themselves or transferring the funds other than for the principal's benefit, then the fiduciary duty inherent in the agency relationship and protected by the statute and UPA would be broken. FHR would have then "negotiated" the check, which is disallowed under N.C. Gen. Stat. § 116B.

This is not the case here. FHR lawfully deposited the principal's check into a trust account, sent the agreed amount due to its principal and, only after the principal cashes the trust check as ratification of the transaction, remits its earned compensation. The trial court's order is properly reversed. I respectfully dissent.